**ROADWAY EXPRESS, INC., Appellant,**

v.

**ADMR., OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellees.**

[Cite as *Roadway Express, Inc. v. Ohio Bur. of Emp. Serv.* (1990), 68 Ohio App.3d 201.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–164.

Decided June 22, 1990.

*John T. Landwehr* and *Thomas J. Gibney*, for appellant.

*Anthony J. Celebrezze, Jr.*, Attorney General, and *Sonya M. Jones*, for appellee Ohio Bureau of Employment Services.

*Terry J. Lodge*, for appellee Maurice Rivers.

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which affirmed the decision of the Unemployment Compensation Board of Review that appellee, Maurice Rivers, had been discharged without just cause.

Appellant, Roadway Express, Inc., has appealed, setting forth the following assignment of error:

"The lower court improperly affirmed the decision of the Unemployment Compensation Board of Review, which decided that appellee Rivers was discharged without just cause, because said decision is against the manifest weight of the evidence and improper as a matter of law."

The facts giving rise to this appeal are as follows. Appellee Rivers was hired by appellant as a diesel mechanic on March 19, 1973. In August 1986, following a disciplinary hearing that he did not attend, Rivers was given a two-day suspension for an accumulation of warning letters for a number of infractions, including poor work performance, absenteeism, tardiness and insubordination. Following the suspension, Rivers filed a grievance in which he asserted that he had not received proper, written notification of that disciplinary hearing and, therefore, he rightfully refused to attend. A grievance hearing was held on September 23, 1986, at which it was determined that Rivers had not been properly notified of the disciplinary hearing and, therefore, he was entitled to two days' back pay. After the grievance hearing, appellant's labor relations manager, Jim O'Neal, announced that within seven-

ty-two hours another hearing would be held on Rivers's accumulated work record. The chief union steward and Rivers's business agent were notified by telegram of a September 26, 1986 hearing. When appellant attempted to deliver written notice of the hearing to Rivers, Rivers refused to accept it, claiming that personal delivery was not a proper means of notification. The September 26, 1986 hearing was set for 7:15 a.m. On that day Rivers, still on the clock, was summoned by his superiors and told to attend the hearing. After speaking with his business agent and his chief union steward, Rivers went to the hearing and stated that he did not believe that he should stay since he felt he had not received proper notification and that he wanted his business agent to handle the matter for him. He then left the room, and the hearing proceeded without him being present. At the conclusion of the hearing, Rivers was discharged for his refusal to follow the direct order which requested his attendance at the hearing.

On September 29, 1986, Rivers filed an application for determination of unemployment benefits with the Ohio Bureau of Unemployment Services ("OBES"). On October 23, 1986, the OBES administrator determined that Rivers had been fired for just cause and denied his application for unemployment compensation. On October 30, 1986, Rivers filed a request for reconsideration of the administrator's decision and on December 2, 1986, the decision of the administrator denying Rivers unemployment compensation was affirmed. On December 15, 1986, Rivers filed a notice of appeal from the administrator's decision on reconsideration to the Ohio Unemployment Compensation Board of Review. On January 7, 1987, a hearing was held before a referee for the board of review. One of the witnesses testifying at the hearing was Joseph E. Guy, a garage manager for appellant. Guy testified that, as he understood it, appellee was fired for refusal to follow a direct order to attend the September 26 meeting and that if he had been there he would not have been discharged. Guy also testified as to the events surrounding Rivers's refusal to attend the previous hearing on the basis that he had not been properly notified and the grievance that Rivers had won on the issue of notification. He testified that appellant's usual practice was to provide seventy-two hours' written notice of a union meeting by certified mail to the employee and if there was no such notice there was no need to attend. Guy testified further that Rivers had not been informed that he would be discharged if he failed to attend the meeting.

Rivers himself testified that he did not accept the personal service of notice of the September 26 hearing because it was not proper procedure which, as he understood it, required certified mail service of the notice of the hearing. Rivers testified further that when he was told to come to the meeting he informed his superintendent that he first wished to talk to his union steward

and then his business agent. After doing so he then went into the meeting and informed management that he did not feel he had been properly notified, that he did not have a chance to prepare for the hearing and, therefore, he wished his business agent to handle the matter for him. Rivers testified that no one informed him that he would be fired if he left the hearing.

There was also testimony from several other witnesses as to Rivers's job performance in general and warning letters that he had received, as well as a comparison of his performance and his treatment by management with those of other employees at Roadway.

On May 5, 1987, the referee issued its decision. In its decision the referee concluded that, while Rivers had been notified of the September 26 hearing:

"The facts show that the September 26 hearing was to take place at 7:00 a.m. while the claimant was still on the clock. He had been summoned and ordered by three members of management to attend said hearing. The claimant delayed walking into the office where the hearing was to be held in order to talk with various union officials. However, the facts show that the claimant finally entered said office at 7:37 a.m. at which time the hearing was started by the Roadway Express labor relations manager. It was then that the claimant voiced his opinion that he did not feel that he had received proper notification and wished his business manager [to] whom he pays $30.00 a month to handle this on his behalf. Before he left the office where the hearing was being conducted no individual informed the claimant that if he now left he would be subjected to further disciplinary action. The claimant had just within the last month refused to attend such a hearing because he did not have proper notification and no reprimand was given to him because of his refusal. Thus, the claimant had no reasonable expectation to anticipate any disciplinary action from management for his refusal to stay at the September 26 union hearing. The employer has stated that the claimant would not have been discharged if he had stayed for the September 26 hearing. Thus, it was the claimant's leaving the September 26 hearing that was the final straw which brought about his discharge. Inasmuch as the claimant was not given notice that leaving the hearing would cause further disciplinary action against him, it must then be determined that the claimant was discharged by Roadway Express without just cause in connection with the work. No disqualification of benefits should be imposed as a result of this separation."

The referee reversed the administrator's decision, removed the suspension of benefits previously imposed and allowed Rivers's claim for unemployment compensation.

On May 27, 1987, appellant filed its application to institute further appeal before the board of review from the referee's decision of May 5, 1987. On

October 15, 1987, the board of review disallowed appellant's application to institute further appeal and on January 14, 1988, appellant filed its notice of appeal from the decision of the board of review in the Lucas County Court of Common Pleas asserting that the board's decision was unlawful, unreasonable and/or against the manifest weight of the evidence. On July 12, 1988, appellant filed its statement of assignment of error and brief arguing that the board of review had improperly granted benefits to Rivers, that the board had erred in determining that he had been discharged without just cause and that Rivers had willfully refused to follow a direct order of his superiors which constituted insubordination and sufficient justification for termination.

On November 29, 1988, appellee OBES filed its brief asserting that a determination of just cause is a factual issue that is to be made on a case-by-case basis and that determination of such factual issues as well as the credibility of witnesses is within the province of the referee. Appellee OBES argued further that the fact that reasonable minds could differ was not a basis for reversal of the board's decision and that there was evidence in the record to support its decision.

On May 19, 1989, the trial court issued its opinion and judgment entry, holding that:

"Based upon the evidence presented, this court cannot find that the decision of the board of review that Roadway Express did not make a direct order to appellant and that his discharge for failure to attend was without just cause is unlawful, unreasonable, or against the manifest weight of the evidence. The decision of the Board of Review that Mr. Rivers was discharged without just cause must therefore be affirmed."

It is from this decision that appellant has filed its notice of appeal. In support of its assignment of error, appellant asserts that the trial court improperly affirmed the decision of the board of review because that decision was against the manifest weight of the evidence and was improper as a matter of law. Specifically, appellant argues that the board's findings, that the order to Rivers to attend the meeting was not a direct order and that Rivers was not told that he would be discharged for leaving the hearing room, were against the manifest weight of the evidence. Appellant argues further that the board erred in its application of law to the facts herein since willful disobedience of a reasonable directive by an employer justifies termination of employment. Appellee OBES and appellee Rivers, in opposition, argue that there is credible evidence in the record to support the board's conclusion that Rivers was terminated without just cause.

R.C. Chapter 4141 governs the procedure for the determination of unemployment compensation benefits. R.C. 4141.29 sets forth the requirements for eligibility and qualifications for benefits, and provides in pertinent part:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter.

"* * *

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work, provided division (D)(2) of this section does not apply to the separation of a person under any of the following circumstances[.]"

In defining the term "just cause" for unemployment compensation purposes, the Supreme Court of Ohio in *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 14, 482 N.E.2d 587, 589, said:

"The term 'just cause' has not been clearly defined in our case law. We are in agreement with one of our appellate courts that '[t]here is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12 [73 O.O.2d 8, 9, 335 N.E.2d 751, 752].

"* * *

"The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167, 170, 76 N.E.2d 79, 83]." See, also, *Euclid Manor Nursing Home v. Unemp. Comp. Bd. of Review* (1985), 28 Ohio App.3d 17, 28 OBR 26, 501 N.E.2d 635.

R.C. 4141.28 provides the procedure for the determination of claims for unemployment benefits and also sets forth the procedure to appeal the decision of the administrative body to the court of common pleas. Upon appeal to the court of common pleas from a decision of the Unemployment Compensation Board of Review, the court's function is specifically set forth in R.C. 4141.28(O), which provides in pertinent part:

"Any interested party as defined in division (I) of section 4141.01 of the Revised Code may, within thirty days after notice of the decision of the board was mailed to the last known post-office address of all interested parties, appeal from the decision of the board to the court of common pleas of the county where the appellant, if an employee, is resident or was last employed or of the county where the appellant, if an employer, is resident or has his principal place of business in this state.

" * * *

"The appeal shall be heard upon such record certified by the board. After an appeal has been filed in the court, the board may, by petition, be made a party to such appeal. *If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision.*" (Emphasis added.)

R.C. 4141.28(O) also provides for further appeal to this court from the decision of the common pleas court.

■ With regard to this court's standard of review of an appeal from the decision of the court of common pleas, the Supreme Court of Ohio in *Irvine, supra,* stated that courts serving in an appellate capacity have a limited power of review and may not make factual findings or determine credibility of the witnesses; rather, their duty is simply to determine whether the decision of the board of review is supported by evidence in the record. *Id.,* 19 Ohio St.3d at 18, 19 OBR at 15, 482 N.E.2d at 590. See, also, *Brown–Brockmeyer, supra; Kilgore v. Unemp. Comp. Bd. of Review* (1965), 2 Ohio App.2d 69, 31 O.O.2d 108, 206 N.E.2d 423.

Our reading of *Irvine, supra,* would seem to require this court to apply a manifest weight standard of review to appeals from the decision of a court of common pleas affirming or reversing a decision of the Unemployment Compensation Board of Review. This court notes that it has previously applied an abuse of discretion standard in reviewing this type of appeal, following the decision of the Franklin County Court of Appeals in *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. That decision cites the case of *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, as authority for its application of an abuse of discretion standard in an unemployment compensation appeal. The *Rohde* case, however, deals with appellate review of a trial court's decision granting a new trial in a wrongful death and personal injury action, not an administrative appeal.

After reviewing the *Irvine, Angelkovski* and *Rohde* cases, this court finds that it must apply the standard of review set out by the Supreme Court of Ohio in *Irvine, supra.* Therefore, our role herein is to determine if the decision of the Unemployment Compensation Board of Review is unlawful, unreasonable, or against the manifest weight of the evidence. *Id.,* 19 Ohio St.3d at 19, 19 OBR at 16, 482 N.E.2d at 591.

██ Upon consideration of the record below, including the evidence and the testimony that was before the board of review, this court finds that the board's determination, as affirmed by the court of common pleas, that appellee Rivers was terminated without just cause, is not unlawful, unreasonable, or against the manifest weight of the evidence.

Accordingly, appellant's sole assignment of error is found not well taken.

*Judgment affirmed.*

HANDWORK, P.J., concurs.

Prior to his death, Judge JOHN J. CONNORS, JR. participated in the decision-making process of this case.