REPUBLIC ENGINEERED STEELS, INC., Appellant,

v.

STREGE et al., Appellees.

[Cite as *Republic Engineered Steels, Inc. v. Strege* (1993), 84 Ohio App.3d 782.]

Court of Appeals of Ohio,
Stark County.

No. CA–9128.

Decided May 17, 1993.

*Gust Callas* and *Robert E. Sole, Jr.,* for appellant.

*Lee I. Fisher,* Attorney General, and *Thomas A. Burns,* Assistant Attorney General, for appellee Administrator et al.

FARMER, Judge.

On November 29, 1989, appellee, Phillip P. Strege, began his employment with appellant, Republic Engineered Steels, Inc., as a programmer. In January 1990, appellee's wife died and he was off work from January 19 to January 26, 1990. Subsequently, on March 2, 1990, appellee sought a leave of absence to seek counselling. He was granted a paid medical leave of absence from March 5 to March 16, 1990, specifically to seek counselling. Further, appellee was granted an additional unpaid personal leave of absence from March 21 to April 20, 1990.

On April 25, 1990, appellee left work without notice or permission. The following day, appellee did not show up to work and did not report off. Due to

his excessive absenteeism, walking off work without notification and failure to report off work, appellee was given a three-day suspension from May 2 to May 4, 1990. Appellee was told that it was necessary for him to report off everyday and to provide a doctor's excuse for any future illnesses specifically setting forth the reason for the illness. In addition, he was specifically warned that any future violations of work rules concerning attendance would result in termination.

In June 1990, appellee remarried. Appellee's wife was also employed with appellant.

On October 2, 1990, appellee reported off ill. On October 9, 1990, appellee left work early at 2:00 p.m. indicating that he had a doctor's appointment. Appellee and his new wife subsequently did not report to work from October 10 until October 18, 1990. In support of their absence, they submitted a statement from their doctor, Dr. Johnson, indicating that they were under his care and could not return to work because of "medical reasons." Dr. Johnson did not identify a specific diagnosis.

On October 19, 1990, appellee was cleared to return to work by Dr. W.E. Rumsey, M.D., Medical Director for appellant, and worked all day. Dr. Rumsey advised appellee that the documentation from his doctor was insufficient; therefore, he advised appellee to provide him with a specific medical diagnosis for the time he was off work. No time frame was specified as to when this information had to be provided.

After seeing Dr. Rumsey and returning to work on October 19, 1990, appellee spoke with Don McCalmont, his immediate supervisor, regarding his absences. Appellee told McCalmont that he would obtain a specific diagnosis indicating why he had been absent from work October 10 through October 18, 1990.

On October 22, 1990, appellee's wife called to report appellee and herself off due to "serious medical problems." McCalmont asked for specific medical reasons but was refused any reason other than "medical problems." On that day, appellee and his wife went to see Dr. Villalba. Dr. Villalba told both appellee and his wife to either go back to work or be hospitalized; however, they refused to be hospitalized. Instead, the next day, appellee and his wife drove to Chicago, allegedly to see a specialist. Appellee subsequently did not report to work the remainder of October.

From January 1, 1990 through October 31, 1990, there were two hundred twelve working days. Of the two hundred twelve working days, appellee was off ill from work seventy of these days, or thirty-three percent of the time.

Accordingly, on November 1, 1990, appellee was discharged from his employment with appellant for his chronic absenteeism from work as well as his failure to justify those absences.

Subsequently, on February 21, 1991, appellee filed an application for determination of benefit rights for the benefit year beginning February 17, 1991. The Administrator of the Bureau of Employment Services issued an initial monetary determination allowing appellee's application.

On March 27, 1991, the Administrator issued an initial discharge determination pursuant to R.C. 4141.29(D)(2)(a) finding that appellee was discharged under non-disqualifying conditions. Appellant filed a request for reconsideration of the March 27, 1991 determination based upon the fact that appellee was discharged for just cause from his employment with appellant.

On May 23, 1991, the Administrator issued a reconsideration decision affirming his March 27, 1991 decision regarding the issue of discharge. In accordance with R.C. 4141.28(H) and (I), appellant appealed the Administrator's decision to the Unemployment Compensation Board of Review stating that appellee was discharged from his employment with appellant for just cause for failure to maintain the required work schedule.

On September 23, 1991 and October 15, 1991, hearings were held before Referee Boris Rakowsky. On November 19, 1991, referee Rakowsky issued his decision affirming the Administrator's decision on reconsideration regarding the issue of discharge. On January 23, 1992, the Unemployment Compensation Board of Review issued its decision disallowing appellant's application to institute a further appeal. On February 4, 1992, appellant filed its notice of appeal to the Court of Common Pleas of Stark County from the board's decision disallowing appellant's application to institute a further appeal.

On September 3, 1992, the trial court filed a judgment entry affirming the Unemployment Compensation Board of Review's decision disallowing appellant's application to institute further appeal.

On September 23, 1992, appellant filed its notice of appeal of the trial court's decision and this matter is now before this court for consideration.

Appellant's sole assignment of error is as follows:

"I. The trial court erred by holding that the decision of the Unemployment Compensation Board of Review was not unlawful, unreasonable, against the manifest weight of the evidence, or contrary to law."

Appellant claims that the trial court erred in affirming the order of the Unemployment Compensation Board of Review. We concur.

The first issue to be addressed is the appropriate appellate standard of review in appeals from an administrative order of the Unemployment Compensation Board of Review. We concur with the opinion of Justice Wright in *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482

N.E.2d 587, that "[u]pon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence." *Id.* at 17, 19 OBR at 15, 482 N.E.2d at 590, citing *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 36 O.O. 167, 76 N.E.2d 79. It is the duty of the courts "to determine whether the decision of the board is supported by the evidence in the record." *Id.,* 19 Ohio St.3d at 18, 19 OBR at 15, 482 N.E.2d at 590, citing *Kilgore v. Unemployment Comp. Bd. of Review* (1965), 2 Ohio App.2d 69, 31 O.O.2d 108, 206 N.E.2d 423. We further concur with the opinion of Judge Abood in *Roadway Express, Inc. v. Ohio Bur. of Emp. Serv.* (1990), 68 Ohio App.3d 201, 587 N.E.2d 949, that the *Irvine* opinion requires appellate review to be on the manifest weight of the evidence as opposed to abuse of discretion review previously followed by this court in *Angelkovski v. Buckeye Potato Chips* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280.

■ We are to test whether the trial court's decision was appropriate in applying the standard of "unlawful, unreasonable, or against the manifest weight of the evidence." *Irvine.* In order to so review a trial court's decision, it is necessary for the appellate court to consider the manifest weight of the evidence.

■ We now must review the record and evidence presented. In the case *sub judice* the hearing officer specifically found that the reason for termination was for:

" * * * failure to maintain the required work schedule * * *. The medical director of Republic Engineered Steel[s] requested that claimant provide him with a specific medical diagnosis for the period of time he was off but did not specify when he was to submit this information. Claimant waited to submit such information until it was too late." (Emphasis added.)

The hearing officer then proceeded to find that the termination was without just cause. "Just cause" must be analyzed on a case-to-case basis. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d 8, 9, 335 N.E.2d 751, 752. As is pointed out in *Irvine,* the legislative purpose of the Unemployment Compensation Act is "to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment *through no fault or agreement of his own.*" (Emphasis added.) *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 52, 399 N.E.2d 76, 79.

Using these tests, we find that in his decision, the hearing officer did determine that the claimant was at fault. Therefore, the conclusion of the board of review of "no just cause" was against the manifest weight of the evidence and contrary to law.

The sole assignment of error is sustained.

The judgment of the court of common pleas is hereby reversed.

*Judgment reversed.*

SMART, P.J., and WILLIAM B. HOFFMAN, J., concur.