**DURGAN, Appellee,**

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES, Appellant.**

[Cite as *Durgan v. Ohio Bur. of Emp. Serv.* (1996), 110 Ohio App.3d 545.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006160.

Decided April 24, 1996.

*Richard Schwartz,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Cheri Westerburg,* Assistant Attorney General, for appellant.

SLABY, Judge.

The Ohio Bureau of Employment Services ("OBES") appeals from the Lorain County Court of Common Pleas' judgment that reversed the order of the Ohio Unemployment Compensation Board of Review's (the "board") disallowing Connie Durgan's claim for unemployment benefits. We reverse and enter judgment for OBES.

Durgan was employed with RCT Networks Services, Inc. ("RCT") from September 1972 to May 1993 when she was discharged for chronic and excessive absenteeism. RCT had a "no fault" absenteeism policy in which it reviewed the records of employees with absenteeism rates higher than three to four percent, the average rate for their employees, and counselled those employees whose absenteeism appeared "chronic." RCT included all absences, including those medically excused, in its computation of the rate. RCT considered the frequency and duration of the absences, as well as the reasons for them, when determining whether to counsel a chronic offender. Counselling involved meetings between the employee and management personnel in which the problem would be discussed.

Beginning in September 1990, or earlier, RCT counselled Durgan about her absenteeism rate, which for the year 1990 was sixteen percent. Her attendance did not improve over the next year and in October 1991, RCT again advised her to improve her attendance. In February 1992, another meeting was held and Durgan was demoted, without salary change, to a lower level position for which temporary replacement could be found, so that her absences would be less disruptive for the company. In 1992, Durgan's absenteeism rate escalated to forty-three percent. Subsequent meetings were held in July 1992 and December 1992 in which she was warned that her absenteeism threatened her job. Throughout these meetings, RCT did not dispute that Durgan had been ill and that her illness likely accounted for her absences. Between December 16, 1992, and May 7, 1993, Durgan was absent for forty-nine days. On May 10, 1993, having just returned from an extended absence, Durgan was discharged.

Durgan applied for and was initially granted unemployment compensation. Upon reconsideration, however, the administrator, finding that RCT had discharged Durgan for just cause, reversed his initial determination and suspended compensation. Durgan appealed to the board. At the hearing before the board, an RCT witness testified that, although RCT did not question the reasons for the absences, it required a doctor's substantiation of medical excuses. Durgan also

agreed to knowing that she was supposed to provide documentation for her absences; she testified that she had complied with the documentation requirement, but that she did not bring all the documents with her to the hearing. Noting that Durgan could substantiate medical excuses for only twenty-seven out of forty-nine absences in 1993 and questioning her credibility, the board affirmed the administrator's reconsideration decision.

After an application to institute further appeal was denied by the board, Durgan appealed to the Lorain County Court of Common Pleas. The court, finding that Durgan's absences "were directly related to her illness," reversed the decision of the board and entered judgment for Durgan. OBES now appeals from that judgment; it assigns one error to the proceedings below:

"The common pleas court abused its discretion in finding that [Durgan] was terminated without just cause and in reversing the decision of the Board * * *."

OBES subdivides its argument into three separate claimed errors, all of which relate to the trial court's application of the standard of review in appeals from unemployment compensation decisions of the board. OBES claims that the trial court (1) "exceeded its jurisdiction" by "reevaluating evidence" and "making a factual determination"; (2) misapplied unemployment compensation law regarding medically excused absences; and (3) misapplied the standard of review found in R.C. 4141.28(O) by reversing the board's decision, which was "reasonable, lawful and supported by competent credible evidence." We address these arguments simultaneously.

R.C. 4141.29(D)(2)(a) prohibits the payment of unemployment compensation if the employee "has been discharged for just cause in connection with his work." " '[J]ust cause, *in the statutory sense*, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " (Emphasis added.) *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 697, 653 N.E.2d 1207, 1211, quoting *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 14, 482 N.E.2d 587, 589. It is important to distinguish between just cause for discharge in the context of unemployment compensation and in other contexts. An employer may justifiably discharge an employee without incurring liability for wrongful discharge, but that same employee may be entitled to unemployment compensation benefits. See *Adams v. Harding Machine Co.* (1989), 56 Ohio App.3d 150, 155, 565 N.E.2d 858, 862. This is so because just cause, under the Unemployment Compensation Act, is predicated upon employee *fault*. *Tzangas*, 73 Ohio St.3d at 698, 653 N.E.2d at 1211; *Adams*, 56 Ohio App.3d at 155, 565 N.E.2d at 862. We are, therefore, unconcerned with the motivation or correctness of the decision to discharge. *Friedman v. Physicians & Surgeons Ambulance Serv.* (Jan. 6, 1982), Summit App. No. 10287, unreported, at 6, 1982 WL 2867. The Act protects those

employees who cannot control the situation that leads to their separation from employment. See *Tzangas,* 73 Ohio St.3d at 697, 653 N.E.2d at 1210. Consistent with that purpose, it has been held repeatedly that absenteeism, or inability to work, caused by a bona fide illness or injury is not just cause for termination of an employee. See, *e.g., Schultz v. Herman's Furniture, Inc.* (1976), 52 Ohio App.2d 161, 162, 6 O.O.3d 159, 159, 368 N.E.2d 1269, 1270; *Pearson v. Ohio Bur. of Emp. Serv.* (1985), 21 Ohio App.3d 127, 129, 21 OBR 136, 137, 486 N.E.2d 1198, 1200; *Springston v. Ohio Bur. of Emp. Serv.* (Jan. 5, 1983), Medina App. No. 1191, unreported, at 4, 1983 WL 3940.

Recently, courts have seen the advent of no-fault absenteeism policies similar to that used by RCT in this case. The no-fault system, in which an employer assesses absenteeism without regard to its causes, empowers the worker with the freedom to control his continued employment and also relieves the employer of having to determine whether to excuse the absence. See *Sutherlin v. Interstate Brands Corp.* (1992), 79 Ohio App.3d 635, 637, 607 N.E.2d 1076, 1077; *Coleman v. Ohio Bur. of Emp. Serv.* (Nov. 30, 1995), Cuyahoga App. No. 68853, unreported, 1995 WL 705269. The question arises, however, whether termination pursuant to a no-fault policy can be considered a discharge with just cause for the purposes of unemployment compensation. We believe that the case *sub judice* exemplifies one scenario where that question may be answered in the affirmative.[1]

In *Irvine,* 19 Ohio St.3d at 18, 19 OBR at 15, 482 N.E.2d at 590, the Ohio Supreme Court unequivocally placed the burden of proof upon the employee to prove his or her entitlement to unemployment compensation benefits under R.C. 4141.29(D)(2)(a); accordingly, the burden of proof is upon the employee to establish that she is entitled to unemployment compensation benefits because she was discharged *without* just cause. Where an employer fires an employee for excessive absenteeism under a no-fault policy, the employee may still be entitled to compensation if she can establish that her absences were the result of a bona fide illness. In this context, placement of the burden of proof upon the employee is fair: (1) it is the employee who has access to her own medical records and can obtain physicians' statements; and (2) it promotes the purposes underlying the no-fault system. Thus, the employer may justifiably discharge an employee out of economic necessity spurred by the excessive absenteeism of the employee, regardless of the reasons underlying the absences. See *Tzangas,* 73 Ohio St.3d at 697, 653 N.E.2d at 1210. Concurrently, the employee who is truly " 'without employment through no fault or agreement of his own' " may still obtain financial assistance to help him or her to maintain a decent standard of living. See *Irvine,*

---

1. Other courts have also found just cause to exist where there has been a violation of similar company attendance rules. See, *e.g., Sutherlin,* 79 Ohio App.3d at 637, 607 N.E.2d at 1077; *Coleman,* 1995 WL 705269.

19 Ohio St.3d at 17, 19 OBR at 14, 482 N.E.2d at 589, quoting *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 52, 399 N.E.2d 76, 79.

In conjunction with the burden of proof, it is critical for a reviewing court to apply the correct standard of review. Although this court has previously stated that our examination of unemployment compensation decisions is limited to whether the common pleas court abused its discretion, that opinion must change in light of the Ohio Supreme Court decision in *Tzangas*. The court clarified that there is no distinction between the scope of review of common pleas and appellate courts regarding "just cause" determinations under the unemployment compensation law. *Tzangas*, 73 Ohio St.3d at 696–697, 653 N.E.2d at 1210–1211. Both courts "may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Id.* at 697, 653 N.E.2d at 1210; R.C. 4141.28(O)(1); see, also, *Republic Engineered Steels, Inc. v. Strege* (1993), 84 Ohio App.3d 782, 786, 618 N.E.2d 252, 255; *Roadway Express, Inc. v. Ohio Bur. of Emp. Serv.* (1990), 68 Ohio App.3d 201, 207–208, 587 N.E.2d 949, 953–954.

Moreover, the investigation into just cause is a factual inquiry. *Irvine*, 19 Ohio St.3d at 17, 19 OBR at 14, 482 N.E.2d at 589. Reviewing courts are precluded from making factual findings or determining the credibility of the witnesses in unemployment compensation cases—that is the board's function. *Id.* at 18, 19 OBR at 15, 482 N.E.2d at 590. If there is evidence to support the board's findings, a reviewing court cannot substitute its own findings of fact for those of the board. *Wilson v. Unemp. Comp. Bd. of Review* (1984), 14 Ohio App.3d 309, 310, 14 OBR 374, 375, 471 N.E.2d 168, 169. Nevertheless, the courts do have the "duty to determine whether the board's decision is supported by the evidence in the record." *Tzangas*, 73 Ohio St.3d at 696, 653 N.E.2d at 1210.

Turning to the board's decision in the instant case, we see that it found the existence of just cause for Durgan's discharge based, in part, upon her inability to substantiate her medical excuses and her lack of credibility. To show entitlement to unemployment compensation, Durgan had the burden to show that she was free from fault in bringing about her termination. RCT's failure to question her reasons for her absences because of its no-fault absenteeism policy did not relieve Durgan of that burden. Chronic and excessive absenteeism is generally considered to be just cause for discharge unless a bona fide illness excuses the absences. See, *e.g., Metal Powder Products, Inc. v. Ohio Bur. of Emp. Serv.* (1990), 69 Ohio App.3d 785, 788, 591 N.E.2d 1285, 1287.

Considering Durgan's burden of proof, we find that the board's conclusion that Durgan was discharged for just cause was neither unlawful, unreasonable, nor against the manifest weight of the evidence. Durgan was unable to provide

substantiation of medical excuses for nearly one half of her forty-nine absences in the first five months of 1993 alone. Although she testified that she was ill on all of these days, the board was free to disbelieve her testimony. We, as a reviewing court, must defer to the board's credibility determination. In the absence of proof of a bona fide illness, the evidence of Durgan's excessive absenteeism was sufficient to support the board's finding of just cause for her discharge.

■ The trial court did not agree with the board. The court stated:

"Having carefully considered the evidence presented, the arguments of counsel and the applicable law, the Court finds that the absences of appellant were directly related to her illness, which cannot be a basis for a discharge for just cause. * * * The Court finds that the decision of the Board of Review was unreasonable and against the manifest weight of the evidence, and the Board is reversed, and the Court finds appellant was not terminated for just cause. * * * "

The court erred. Disagreement over findings of fact does not support reversal of the board's decision. *Irvine,* 19 Ohio St.3d at 18, 19 OBR at 15, 482 N.E.2d at 590. The court went outside the boundaries of the proper scope of review by not deferring to the board's factual conclusions and by substituting its own findings; accordingly, appellant's assignment of error is well taken.

■ Durgan has proposed three assignments of error to be addressed in the event that we desire to reverse the trial court's decision. Loc.R. 13 of the Ninth District Court of Appeals provides that an appellate brief "shall not exceed thirty (30) pages, exclusive of the appendix, summary of argument, and index." Durgan's brief, under that rule, is exactly thirty pages. Durgan attempts, however, to argue the majority of her cross-assignments of error by incorporating pages of a brief filed in the court below. Durgan did not move this court for additional pages. We will not countenance circumvention of the Appellate Rules through incorporation by reference of additional argument into a brief; therefore, we address only the few points actually argued by Durgan in the text of her brief. See App.R. 12(A)(2).

Cross–Assignment of Error I

"The employer failed to follow the established, progressive discipline procedure in the discharge of [Durgan]."

Durgan argues that the board erroneously found that "written warnings were reduced to writing" pursuant to an attendance and disciplinary policy that was adopted by RCT and which required a warning slip to be issued if more than ten days per year were missed. Contrary to Durgan's contention, the board did not so find; the quote was taken from the statement that "[t]he company * * *

contends that claimant was warned by management about her attendance at work and these warnings were reduced to writing." This is not a finding of fact; it is merely a restatement of an argument.

■ Even if this were a finding of fact, it would not necessarily be erroneous. The evidence was undisputed that Durgan repeatedly met with management and was orally warned that she could be terminated because of her poor attendance. The discussions held in these meetings, including the fact of warning, were reduced to writing in memoranda that were introduced into evidence at the hearing. These memoranda confirmed that, even if a written warning did not issue, Durgan knew that she could be terminated if her attendance did not improve. A finding that RCT had not issued a warning slip under these circumstances would not have affected the ultimate decision.

Durgan's first cross-assignment of error is overruled.

Cross–Assignment of Error II

"[Durgan] was denied a fair hearing and due process of law, by the denial of the right to raise objections at the hearing; issue switching at hearing; and excessive leading of the employer's witness."

Durgan complains that the hearing officer did not allow her to interpose any objections to testimony at the hearing. Durgan has not identified in her brief what objections would have been made; therefore, we are unable to determine whether any prejudice resulted to her as a result of the claimed error. To constitute reversible error, it is necessary that the error affects the substantial rights of the complainant. Civ.R. 61. Prejudice has not been shown in this case.

The second cross-assignment of error is overruled.

Cross–Assignment of Error III

"[Durgan] would be entitled to benefits had she voluntarily quit on the same grounds used by the employer as the basis for her discharge."

Durgan has not set forth in her brief any argument supporting this cross-assignment of error; accordingly, we do not address it.

Durgan's third cross-assignment of error is overruled.

The judgment of the trial court is reversed, and judgment is entered in favor of appellant, OBES.

*Judgment reversed.*

QUILLIN, P.J., and DICKINSON, J., concur.