JOURNAL ENTRY AND OPINION
The Ohio Bureau of Employment Services ("OBES") appeals the decision of the trial court which reversed an award of unemployment compensation granted to Tanya D. Sanders, an employee of appellee, Case Western Reserve University ("CWRU").
Tanya Sanders was employed by CWRU as a technician caring for research animals. She was hired under a ninety-day probationary period and was subject to CWRU's Disciplinary Action Policy and the Animal Resource Center Attendance Policy, which set forth specific guidelines for attendance.
The policy for attendance is a no-fault policy based on a point system whereby two points are assessed for every one occurrence of an absence. There is no stated penalty for punching out early after an employee has completed the work for his shift if he was given permission by his team leader. A no-fault system means that the reason for the employee's absence is not taken into account in enforcing the attendance policy unless the absence is excused under the Family and Medical Leave Act.
During Sanders' probationary period, she accumulated ten points for her absences. Because of her excessive points, CWRU extended her probationary period for another thirty days, until October 15, 1998, to give her an opportunity to improve her attendance record. At the end of her extended probationary period, Sanders was advised in writing that "Tanya understands that she must not accrue any further points (within this 6 month period) or she will be terminated. This is due to the fact that she has accrued 22 points of absence already in a four month period."
In November 1998, Sanders received another written warning regarding her excessive absences. This disciplinary action form, which was signed by Sanders, stated:
 Any additional occurrences of absence during the six-month period which would raise Tanya above the 11 occurrences she currently has would be grounds for immediate termination. Once this six-month period has elapsed and these points are gone, Tanya MUST remain within the limits set by the University of 6 occurrences [sic] within six months. She must also have no performance problems since attendance and performance are dealt with as the same.
Sanders was given a ten-day period to demonstrate an improvement in attendance. On December 15, 1998, she received a memorandum from Jayne Poyer that congratulated her and informed that she had successfully completed the required ten-working-day time frame for improvement. In addition, she was informed by Jayne Poyer that "I must, however, warn you that if in the future you have any further attendance or performance problems that discipline would include only one session and termination would be likely."
In a memorandum dated June 25, 1999, Jayne Poyer recounted a meeting with Sanders where they again discussed her continued accumulation of points based on absences. The memorandum further stated that "you are also aware that since you have already received a written warning of termination for attendance that should you exceed the University's limit that no further warnings would be issued, termination is likely." Sanders claimed during the unemployment compensation review commission hearing that the signature on the bottom of the memorandum was not hers and that someone had forged her signature on it. She did, however, state that the dates in the memorandum, with one exception, accurately reflected her attendance record.
In November 1999, a personnel meeting took place with all of the Animal Research Center ("ARC") technicians present. During the meeting, according to Jayne Poyer, all of the ARC technicians were informed that they needed to adhere to the attendance policy and make certain to obtain advance permission from their team leaders before they could leave work early. Sanders maintains that this was never discussed during the meeting and that the attendance policy has never been fully enforced.
On December 28, 1999, Sanders completed her work early and left without the approval of her team leader, Leroy Fruit. She asserted that she paged Mr. Fruit and, when he did not respond, she left without attempting to contact another team leader. Additionally, on December 30, 1999, Sanders completed her work assignments and once again attempted to leave early so that she could go to the bank. She stated during the review that she attempted to contact her team leader, Mr. Fruit, but after receiving no response from repeated pages, she told another co-worker that she was leaving early.
Sanders was subsequently terminated from CWRU for failure to properly follow the attendance policies, and she filed for unemployment compensation benefits, which were granted to her by the OBES after they determined that the discharge had been without just cause. CWRU appealed this determination to the Ohio Unemployment Compensation Review Commission, pursuant to R.C. 4141.28(G). Based on the evidence presented, the Review Commission also determined that the discharge was without just cause.
CWRU then appealed to the Cuyahoga County Court of Common Pleas claiming that the Review Commission's decision was unlawful, unreasonable and against the manifest weight of the evidence. The trial court agreed and reversed the earlier decisions based on the manifest weight of the evidence.
OBES now appeals and asserts the following sole assignment of error:
 THE CUYAHOGA COUNTY COMMON PLEAS COURT ERRED IN REVERSING THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION AWARD OF UNEMPLOYMENT BENEFITS TO AN APPLICANT WHO HAD BEEN DISCHARGED WITHOUT JUST CAUSE IN CONNECTION WITH WORK.
OBES contends that Sanders' employer discharged her based on a policy that was never strictly enforced; therefore, her termination was without just cause.
The decision of the unemployment board of review may only be reversed by a reviewing court if the decision is unlawful, unreasonable or against the manifest weight of the evidence. Irvine v. Unemp. Comp. Bd. ofReview (1985), 19 Ohio St.3d 15, 17-18. "In Johnson v. Ohio Bd. of Emp.Serv., 1998 Ohio App. LEXIS 2177 (May 14, 1998) Cuyahoga App. No. 73591, unreported, we set forth the standards applied in reviewing a decision of the OBES:
 The Ohio Supreme Court in Tzangas, Plakas and Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207 found that pursuant to R.C. 4141.28(O), an appellate court may reverse the Review Commission's decision only if it is unlawful, unreasonable or against the manifest weight of the evidence. In Tzangas, the Supreme Court found that this same standard of review applies to each judicial appellate level including the Common Pleas Court, the Court of Appeals and the Ohio Supreme Court. Id. at 697. Following this standard, a reviewing court is not permitted to make factual findings to decide the credibility of witnesses, as determinations of purely factual questions are primarily reserved for the Review Commission. Irvine v. Unemployment Comp. Bd. of Review (1985), 19 Ohio St.3d 15, 18, 19 Ohio B. 12, 482 N.E.2d 587; Brown-Brockmeyer Co. v. Roach (1947), 148 Ohio St. 511, 36 Ohio Op. 167, 76 N.E.2d 79.
Koval v. Director, Ohio Dept. of Job and Family Serv., et al. (November 15, 2001), Cuyahoga App. No. 79424, unreported, 2001 Ohio App. LEXIS 5080, at 8-9.
The board determined that Sanders was discharged without just cause and that "no probative evidence has been introduced at this hearing to show that claimant was guilty of any neglect or misconduct in connection with work which led to her immediate separation from Case Western Reserve University." Additionally, the board determined that the weight of the evidence supported the claimant's position.
R.C. 4141.29(D)(2)(a) prohibits the payment of benefits to an individual if the individual "has been discharged for just cause in connection with the individual's work." "Just" cause has been determined to mean that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. Irvine, supra.
In this case, Sanders bears the burden of proving that her employer lacked just cause for her discharge. Irvine, supra. She must be able to demonstrate a showing of entitlement to unemployment compensation by showing that she was free from fault in bringing about her termination. Other courts have discussed this burden and its application to a no-fault absenteeism policy. In Durgan v. Ohio Bur. of Emp. Serv. (1996),110 Ohio App.3d 545, the court discussed the claimant's burden and the application of a no-fault policy. The court stated:
 RCT's failure to question her reasons for her absences because of its no fault absenteeism policy did not relieve Durgan of that burden. Chronic and excessive absenteeism is generally considered to be just cause for discharge unless a bona fide illness excuses the absence. See, Metal Power Products, Inc. v. Ohio Bur. of Emp. Serv. (1990), 69 Ohio App.3d 785, 788; Coleman v. Ohio Bur. of Emp. Serv. (Nov. 30, 1995), Cuyahoga App. No. 68853, unreported, 1995 Ohio App. LEXIS 5288.
This court's review should not be limited to the final two instances of Sanders leaving work early without first contacting a team leader; we should examine her total employment history in reviewing a determination of "just cause". Coleman, supra; See Sutherlin v. Interstate BrandsCorp. (1992), 79 Ohio App.3d 635.
Upon review of the transcript from the Review Commission, this court must agree with the trial court and find that based upon the evidence upon which the review board relied, the decision of the review board was both unlawful and unreasonable and was against the manifest weight of the evidence.
The testimony produced at the review demonstrated that Sanders maintained a chronic abuse of CWRU's attendance policy. The review board, however, pointed out a few inaccuracies in Sanders' computer-generated attendance records as cause to question all of her listed absences. In regard to those inaccuracies, the record further displayed that there was only one instance, a mix-up of two dates taken together, that was incorrect; the rest were, in fact, accurate. Additionally, Sanders received several written and verbal warnings about her attendance abuse and yet, she continued to accumulate points under the attendance policy.
In a six-month period, Sanders accumulated enough points due to absences and late arrivals to warrant action by CWRU. As stated in prior warnings received by her and as stated in the employee attendance policy, any violations of the points policy after an initial warning can result in an employee's termination.
The trial court correctly determined that the decision of the Review Board was unlawful, unreasonable, and against the manifest weight of the evidence. Therefore, appellant's sole assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., CONCURS. ANNE L. KILBANE, P.J., CONCURS IN JUDGMENT ONLY(WITH SEPARATE CONCURRING OPINION ATTACHED.)