OPINION
Appellant Gary Dean Higgins appeals the decision of the Morrow County Court of Common Pleas that affirmed the decision of the Unemployment Compensation Review Commission denying his request for unemployment compensation. The following facts give rise to this appeal.
From March 17, 1999 to May 21, 1999, appellant worked at Cardington Yutaka Technologies, Inc. ("Cardington Yutaka") as a spot welder. Cardington Yutaka has an attendance policy that permits termination of employment if an employee fails to call regarding absences for three or more consecutive days. For a medical condition lasting three or more days, short-term disability leave is available with medical proof of the health condition. This policy is set forth in Cardington Yutaka's handbook which is provided to new employees at the time of hire.
The record indicates that appellant's first absence occurred on May 24, 1999. Appellant was to report to work at 5:30 a.m. He failed to do so and called Cardington Yutaka two and one-half hours later to request the day off as sick leave. On May 25, 1999, appellant again missed work and also failed to call in his absence prior to the start of his shift. When appellant finally called Cardington Yutaka, on this date, he talked to Todd Mitchell, Cardington Yutaka's administration coordinator.
Appellant informed Mr. Mitchell that he suffered from a medical condition that prevented him from working and that he had a doctor's appointment on June 2, 1999. Mr. Mitchell asked appellant to have his doctor fax a medical excuse to Cardington Yutaka, that same day, in order for appellant's absence to be excused. Mr. Mitchell informed appellant that each absence would be counted against him as an unexcused absence unless he provided proper medical documentation. Appellant called his doctor, on this date, but was unable to obtain a medical excuse because his doctor was not in the office.
On May 26, 1999, appellant again failed to appear for work or call regarding his absence. As a result, Cardington Yutaka telephoned appellant and left a message to call back concerning his absence. Appellant did not return the call. Appellant also did not obtain the necessary medical documentation requested by Cardington Yutaka. Appellant did not report to work on May 27, 1999, and failed to call about his absence or provide the requested medical documentation. Cardington Yutaka mailed a letter to appellant, dated May 27, 1999, in which it advised him that he had failed to call about his absences according to company policy and that he needed to provide a doctor's excuse no later than 4:00 p.m. on June 1, 1999, in order to avoid jeopardizing his employment status. Appellant received this letter on May 28, 1999, but failed to contact Cardington Yutaka or his doctor.On June 1, 1999, appellant again failed to report to work, call about his absence or provide the requested medical documentation. Based upon his failure to provide the requested medical documentation, Cardington Yutaka discharged appellant for excessive, unexcused absenteeism. Appellant did eventually provide the requested medical documentation on June 3, 1999.
Thereafter, on August 16, 1999, appellant applied for unemployment compensation benefits. On August 17, 1999, appellant received a "Notice of Determination of Benefits Rights." This document indicated the total monetary entitlement that could be paid to appellant during a benefit year. This document also indicated that appellant's application was allowed, with a reminder that "[t]his determination does not mean the claimant will receive benefits." Subsequently, on September 10, 1999, the director of the Ohio Department of Job and Family Services determined that appellant was not entitled to unemployment compensation benefits. Appellant appealed this decision and the director affirmed this determination on September 22, 1999.
Appellant appealed this decision to the Unemployment Compensation Review Commission. A hearing officer conducted a hearing on appellant's appeal on November 5, 1999. The hearing officer affirmed the decision denying appellant unemployment compensation benefits on November 9, 1999. Thereafter, appellant filed a request for review of the hearing officer's decision. On December 21, 1999, the Unemployment Compensation Review Commission disallowed appellant's request for review. Appellant filed his notice of appeal, with the trial court, on January 12, 2000. The trial court filed a judgment entry, on June 29, 2001, affirming the decision of the Unemployment Review Commission to deny appellant benefits.
Appellant timely filed a notice of appeal from the trial court's decision and sets forth the following assignment of error for our consideration:
 I. THE TRIAL COURT ERRED IN NOT REVERSING THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION OF THE STATE OF OHIO OF DECEMBER 21, 1999.
 I
In his sole assignment of error, appellant contends the trial court should have reversed the decision of the Unemployment Compensation Review Commission. We disagree.
The applicable standard of review for appeals from the Unemployment Compensation Review Commission is contained in R.C. 4141.28(N). This statute provides, in pertinent part:
* * *
 If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. * * *
As a reviewing court, we may neither substitute our judgment for that of the commission on questions of fact nor reassess the credibility of the witnesses. Kilgore v. Bd. of Rev., Bur. of Unemp. Comp. (1965),2 Ohio App.2d 69, 72. It is based upon this standard that we review appellant's sole assignment of error.
Appellant sets forth several arguments in support of his contention that the trial court should have reversed the decision of the Unemployment Compensation Review Commission. First, appellant maintains the director should not have considered the "Request to Employer for Separation Information" form, in denying appellant benefits, because the form had to be completed and returned to the administrator within ten working days and the form returned by Cardington Yutaka does not indicate when it was filed.
A review of the record indicates Cardington Yutaka filed its response on August 23, 1999, by facsimile transmission. Pages one and two contain the following facsimile transmittal information at the top of the pages: "Aug. 23. 1999 9:00AM CARDINGTON YUTAKA TECH INC. NO. 875 P. ." Therefore, Cardington Yutaka timely filed the requested form and the director lawfully considered its response in denying unemployment compensation benefits to appellant.
Second, appellant contends he quit work for just cause because of the problem with his ankle that required surgery. In support of this argument, appellant cites R.C. 4141.29(D)(2)(a), which provides:
 (D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:
* * *
 (a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work, * * *:
Appellant argues that according to the above statute, he could not be terminated for both reasons. Although appellant maintains he quit his employment for just cause due to a medical problem, Cardington Yutaka claims appellant voluntarily quit his employment due to the three consecutive, unreported absences. Appellant contends there is nothing in the record to indicate that the company's policy is that three or more consecutive, unreported absences constitute a voluntary quit. We disagree with this argument, as the record contains Cardington Yutaka's attendance policy which provides, in pertinent part:
POLICY: Attendance — 307
 Good attendance and punctuality are vital to the safe and efficient operations of CYT. Excessive absenteeism, patterns of absenteeism, or tardiness are not acceptable.
* * *
Unreported Absences
 Any unreported absence for three or more consecutive days may result in separation from employment.
The record also indicates appellant received a copy of the company's policy handbook and was familiar with the attendance policy. Tr. at 26. Cardington Yutaka clearly had a policy on this issue and appellant was aware of this policy. Therefore, Cardington Yutaka, pursuant to its absenteeism policy, properly terminated appellant's employment as a voluntary quit because violation of a company policy justifies termination and the denial of unemployment compensation benefits. Harpv. Adm., Bur. of Unemp. Comp. (1976), 12 Ohio Misc. 34, 38.
We also disagree with appellant's argument that he had just cause to quit his employment. Just cause is defined as "* * * that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine v. Unemp. Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, 17. Even if we were to determine that appellant had just cause to quit his job due to his medical problem, we do not find an ordinarily intelligent person would fail to report his or her absence prior to their scheduled shift and fail to provide requested medical documentation until after they were terminated from their employment. It is the employee's responsibility to provide medical documentation in support of an illness once such information is requested by the employer. Durgan v. Ohio Bur. of Emp. Serv. (1996), 110 Ohio App.3d 545,551.
Finally, appellant maintains the trial court misapplied the case ofTzangas, Plakas and Mannos v. Admin., Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, to the case sub judice, in concluding that appellant was at fault for his discharge. In the Tzangas, Plakas and Mannos case, the Ohio Supreme Court discussed the legislative purpose of the Unemployment Compensation Act:
 The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Id. at 697-698.
Appellant argues that he was not at fault for his discharge. However, "[i]f the employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause."Id. at 698. We do not find the trial court misapplied the above case law as Cardington Yutaka advised appellant that he had failed to timely report his absences according to company policy and failed to provide a doctor's excuse justifying his absence.
Accordingly, we conclude the trial court's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.
Appellant's sole assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morrow County, Ohio, is affirmed.
Pursuant to App.R. 24(A)(2), appellant shall pay costs in this matter.
Hon. William B. Hoffman, P. J., Hon. Sheila G. Farmer, J., Hon. John W. Wise, J., concur.