[Cite as *Pettry v. Ohio Dept. of Job & Family Servs.*, 2023-Ohio-4350.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

BEANITA DOUGLAS

    Appellant

    v.

DIRECTOR, OHIO DEPT. OF JOB &
FAMILY SERVICES, et al.

    Appellees

C.A. No.      23CA011937

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    22-CV-205348

DECISION AND JOURNAL ENTRY

Dated: December 4, 2023

---

HENSAL, Presiding Judge.

**{¶1}** Beanita Pettry, fka Beanita Douglas, appeals an order of the Lorain County Court of Common Pleas that affirmed a determination of the Unemployment Compensation Review Commission ("UCRC"). This Court affirms.

I.

**{¶2}** Ms. Pettry's employment with Rite Aid was terminated after she provided information about gift cards to an individual who impersonated another Rite Aid employee in the course of a financial scam. Ms. Pettry applied for unemployment benefits, but her application was initially disallowed based on the conclusion that she was discharged with just cause. Ms. Pettry appealed the initial determination, and the disallowance of her application was affirmed. Ms. Pettry appealed the redetermination to the UCRC under Revised Code Section 4141.281. The hearing officer determined that although Ms. Pettry

"was the victim of a well-executed scam," she violated Rite Aid's policy addressing prepaid payment cards, which led to a substantial monetary loss. Based on that conclusion, the hearing officer affirmed the redetermination and disallowed her application for benefits. Ms. Pettry requested review of the hearing officer's determination by the UCRC. The UCRC allowed the request but affirmed the hearing officer's decision.

{¶3} Ms. Pettry appealed the UCRC's decision to the Lorain County Court of Common Pleas as permitted by Section 4141.282. The trial court concluded that the determination that Ms. Pettry was discharged for just cause was supported by competent, credible evidence and that the UCRC's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. Ms. Pettry appealed.

II.

**ASSIGNMENT OF ERROR**

THE DECISION OF THE UCRC HEARING OFFICER IS ERRONEOUS
IN THAT IT IS UNLAWFUL, UNREASONABLE, AND AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} Ms. Pettry's assignment of error argues that the conclusion that she was discharged for just cause is unlawful, unreasonable, and against the manifest weight of the evidence. This Court does not agree.

{¶5} A decision by the UCRC that a claimant was discharged with just cause can be reviewed by the court of common pleas, and "[i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the [UCRC]." *Williams v. Ohio Dept. of*

*Job and Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20, quoting R.C. 4141.282(H). This power of review is "limited," and as such, a reviewing court cannot make factual findings or determine the credibility of witnesses. *Irvine v. State Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18. This Court must apply the same standard of review to just-cause determinations by the UCRC. *Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 551 (9th Dist.1996), citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs*, 73 Ohio St.3d 694, 696-697 (1995).

{¶6} Under Section 4141.29(D)(2)(a), no individual who has "quit work without just cause or has been discharged for just cause in connection with the individual's work" may receive unemployment compensation. "Just cause" means "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist.1975). When considering whether an employee has been terminated for just cause, "[f]ault on behalf of the employee is an essential component[.]" *Tzangas* at paragraph two of the syllabus. The existence of fault, however, "cannot be rigidly defined" and must be evaluated with consideration for the facts in each case. *Id*. at 698, citing *Irvine* at 17. As the Supreme Court of Ohio has explained,

> The [Unemployment Compensation] Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

*Id.* at 697-698. Fault denotes culpability on the part of the employee. *Sprowls v. Ohio Dept. of Job & Family Servs.*, 156 Ohio App.3d 513, 2004-Ohio-1317, ¶ 22. "A mere causal nexus between the termination and some circumstance or condition affecting the employee is insufficient to show that the termination was for just cause." *Id.* Conversely, "the employee must * * * demonstrate[e] he [or she] *was without fault* in the incident resulting in his termination to show he is entitled to unemployment compensation." (Emphasis added.) *Clucas v. RT 80 Express, Inc.*, 9th Dist. Lorain No. 11CA009989, 2012-Ohio-1259, ¶ 7, citing *Irvine* at 17.

{¶7} Ms. Pettry has argued that the hearing officer's conclusion that she violated company policy is against the manifest weight of the evidence and that the record does not support the conclusion that she was at fault in the incident that led to her discharge. The hearing officer determined that Ms. Pettry violated Rite Aid's policy regarding prepaid cards, which includes Rite Aid gift cards. According to the hearing officer, that policy "states that Rite Aid employees must never attempt to activate or provide a prepaid card account number or PIN if being instructed to do so by an incoming phone call." The hearing officer also noted that the policy provides for disciplinary action up to and including termination of employment for violations, and the hearing officer observed that Ms. Pettry had been trained on the policy. The hearing officer found that on July 15, 2021, a person called the store where Ms. Pettry worked, impersonated another Rite Aid employee, and instructed Ms. Pettry to call another phone number to help resolve a prepaid card scam. The individual instructed Ms. Pettry to act quickly. When she complied, a different individual instructed Ms. Pettry to "go to a register, scan seven prepaid cards, and

put a certain amount of funds on each card. He also asked for the transaction and PIN numbers on the cards, which [she] provided. [Ms. Pettry] placed a total of $3,368.65 on the seven prepaid cards." The hearing officer noted that Ms. Pettry did not believe that she was activating gift cards and explained that shortly after the incident, Ms. Pettry was notified that the store had been scammed. Ms. Pettry's employment was terminated on July 23, 2021.

{¶8} As the hearing officer explained, Rite Aid has a policy addressing prepaid cards, including Rite Aid gift cards. That policy applies to all employees, and it provides:

> Rite Aid associates must never attempt to activate a prepaid card or provide a prepaid card account number or PIN if being instructed to do so by an incoming phone call. No one from Rite Aid, Green Dot, or another company will ever call and ask you to activate a prepaid card. Rite Aid associates must never ring up or activate a prepaid card unless the customer is present and has made full payment.

During the hearing, a Regional Asset Protection Leader involved in Ms. Pettry's discipline described the gift card scam, which was an issue at stores throughout the company. He explained that under the prepaid cards policy, "under no circumstances do we process any prepaid card transactions without a customer present in front of [the employee] * * * and we advised that every single time we are talking about prepaid cards without a customer present we are to immediately hang up the phone." He also explained that the policy had been communicated by email and through in-store training, and he noted that "the phones within the store had yellow stickers on them that say that exact message." He testified that all of the employees who violated the prepaid cards policy in connection with the scam were discharged.

{¶9} Ms. Pettry testified that the unknown caller told her that the store where she worked had been the target of a scam and that she had only forty-five minutes to act. The caller gave her a phone number to call that he identified as Rite Aid security and urged her to act quickly. Ms. Pettry followed the caller's instructions, and she testified that she did not contact anyone from Rite Aid security before doing so. She testified that she then followed the instructions that she was given when she called the number, which were to swipe several cards and read the numbers from them over the phone. Ms. Pettry testified that she believed she was reversing transactions. She also acknowledged that she was aware of the prepaid cards policy, that it had been covered during her training, and that she knew not to activate gift cards over the phone.

{¶10} This Court cannot conclude that the hearing officer's conclusions are against the manifest weight of the evidence. The testimony during the hearing established that Rite Aid had a policy that prohibited transactions involving prepaid cards outside of the physical presence of the customer. Ms. Pettry did not dispute that she called the number provided by the unknown caller without verifying that it was a Rite Aid number or that she provided gift card information over the phone once she did so. The hearing officer did not use the word "fault" in the determination and acknowledged that Ms. Pettry's actions occurred in the course of a scam perpetrated across the company involving multiple employees. Nonetheless, the procedure for appeals from UCRC decisions contemplates that reviewing courts will "leave undisturbed the [UCRC's] decision on close questions." *Irvine*, 19 Ohio St.3d at 18, quoting *Charles Livingstone & Sons, Inc. v. Constance*, 115 Ohio App. 437, 438 (7th Dist.1961). This Court must, therefore, conclude that the hearing

officer's conclusion that Ms. Pettry was discharged with just cause is not unlawful, unreasonable, and against the manifest weight of the evidence. Ms. Pettry's assignment of error is overruled.

## III.

**{¶11}** Ms. Pettry's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

KENNETH J. KOWALSKI and DORON M. KALIR, Attorneys at Law, for Appellant.

DAVE YOST Attorney General, and BRIAN P. MURPHY, Senior Assistant Attorney General, for Appellee.