SALZL, APPELLEE, *v.* GIBSON GREETING CARDS, INC.;
BOARD OF REVIEW, BUREAU OF EMPLOYMENT SERVICES,
APPELLANT.

[Cite as Salzl v. Gibson Greeting Cards (1980),
61 Ohio St. 2d   35.]

(No. 79-516—Decided January 9, 1980.)

*Mr. Donald J. Meyer,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Raymond A. Stegmeier,* for appellant.

*Per Curiam.* The issue before this court is whether an employee has either quit his work without just cause or has been discharged for just cause within the meaning of R. C. 4141.29 (D) (2) (a) when, at the age of 65, he was involuntarily discharged pursuant to the provisions of a unilaterally enacted company retirement and pension plan. If so, the employee is ineligible for unemployment compensation benefits.

The relevant portions of R. C. 4141.29 read as follows:

"(D)***no individual may serve a waiting period or be paid benefits***
"****

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work***."

A claimant is rendered ineligible for unemployment benefits if he quits without just cause or if he is discharged with cause. The claimant in this cause did not quit his job; he was forced to retire. Therefore, the first clause of R. C. 4141.29 (D) (2) (a) is inapplicable. The issue then becomes whether the claimant was discharged for just cause.

In the case where an employee is retired or discharged pursuant to retirement provisions of a collective bargaining agreement entered into between the employer and the union representing the employee, the employee-claimant is considered to have been discharged for just cause in connection with his work and therefore not entitled to unemployment compensation benefits. See *Dowler* v. *Bd. of Review* (1976), 9 Ohio St. 2d 42; *Ivy* v. *Dudley* (1966), 6 Ohio St. 2d 261. Both of these cases relied on the reasoning of *Marcum* v. *Ohio Match Co.* (1965), 4 Ohio App. 2d 95.

Given factual components similar to those in the instant cause, appellate courts in the state have come to differing conclusions. See *Garvin* v. *Giles* (Lucas Co. 1977), 55 Ohio App. 2d 1 (benefits granted); *Mayer* v. *Gray Drug Stores* (Richland Co. June 29, 1978), No. CA 1716, unreported (benefits granted); *May Co.* v. *Bd. of Review, supra* (49 Ohio App. 2d 21) (benefits denied).

In *May Co., supra,* the appellate court held that no distinction existed between a non-union employee who was forced to retire at age 65 under a company pension program and the union member mentioned in *Ivy* and *Dowler.* Finding no distinction, the court denied the claimant unemployment benefits.

We disagree. There is a notable distinction between an employee who leaves work pursuant to a pension and retirement plan which was negotiated by his union and accepted as part of his contract and an employee who is forced to leave

his employment because of a unilaterally enacted pension program calling for mandatory retirement at age 65. The decision in *Marcum, supra,* was based upon the concept that the employee's agent, his union, entered into a contract which included the benefit of a retirement pension and the duty to retire at age 65. In return for receiving his pension benefits, he agreed to retire. Because the pension plan was a part of his contract with the employer, the employee's termination was voluntary and self-imposed.

In the cause *sub judice,* the employee never agreed to retire; he was terminated against his will. It can hardly be said that the claimant agreed to the terms of the pension plan, for he was placed in the position of accepting the plan or leaving the company. There was no prior bargaining whatsoever and the plan was presented to him *post facto.* Consequently, we hold that the claimant in the instant cause has been discharged without just cause, and he is entitled to unemployment benefits. We have reviewed the cases in Annotation, 50 A.L.R. 3d 880, Unemployment Compensation: Eligibility of Employee Laid Off According To Employer's Mandatory Retirement Plan, which find an implied agreement, but do not find them to be persuasive.[1]

The above holding violates neither Section 26, Article II of the Ohio Constitution, nor Section 1 of the 14th Amendment to the United States Constitution.[2] As we recently stated in *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, at page 376: "***unequal treatment of classes of persons by a state is valid if the state can show that a rational basis exists for the

---

[1] Appellant asserts that allowing the employee benefits would amount to an unconstitutional impairment of a contractual obligation. Since there was no agreement to retire in the instant cause, we find the contention to be without merit.

[2] Claimant argues that the appellant should not be raising federal and state constitutional issues which were not raised in the appellate court. He concludes that this court should not consider those matters. Such a conclusion logically follows when the judgment of the trial court is affirmed by the appellate court. In a case where the intermediate appellate court reverses the judgment below the issue becomes the error that the Court of Appeals may or may not have committed. In the case *sub judice,* constitutional questions arose because of the appellate court's construction of the benefits statute (R. C. 4141.29 [D] [2] [a] ). It is only logical that we pass upon those questions in making our determination. See *McKenzie* v. *Horr* (1864), 15 Ohio St. 478, 481; and see the *dictum* in *State, ex rel. Herbert,* v. *Ferguson* (1944), 142 Ohio St. 496, 503.

inequity. Ordinarily, under a rational basis requirement, any classification based 'upon a state of facts that reasonably can be conceived to constitute a distinction or difference in state policy***' will be upheld. *Allied Stores of Ohio* v. *Bowers* (1959), 358 U. S. 522, 530."

A rational basis exists for the distinction in the instant cause. As mentioned earlier, and as stated in the Court of Appeals' opinion below, "[o]ur national recognition of the importance of collective bargaining makes manifest our acknowledgment that through union representation the employee's interests are better protected. Furthermore, there is patently a difference between a plan negotiated at arm's length and one unilaterally adopted by the employer."

The case of *Chambers* v. *Owens-Ames-Kimball Co.* (1946), 146 Ohio St. 599, cited by the appellant is not controlling. The language in the case discussing uniformity is *dictum* since the instant cause deals with retirement, not refusing to accept a job when one is unemployed as was the case in *Chambers*.

R. C. 4141.46 states that the Unemployment Compensation Act is to be liberally construed. In allowing the claimant benefits in this cause, the purposes of the act are fulfilled. The act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own. The claimant fits this description. We find that R. C. 4141.29 (D) (2) (a) should be liberally construed to grant the claimant benefits.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and JACKSON, JJ., concur.

HOLMES, J. dissents.

JACKSON, J., of the Eighth Appellate District, sitting for LOCHER, J.

HOLMES, J., dissenting.   I am compelled to dissent from the majority herein for a number of reasons which I herewith set forth. I recognize and approve of the validity of the position of labor unions in representing employees in negotiating

labor contracts including beneficial pension plans. I also approve of the holding in *Marcum* v. *Ohio Match Co.* (1965), 4 Ohio App. 2d 95, that an employee is bound by the mandatory retirement provisions in a collective bargaining agreement negotiated on his behalf by his agent, the union, and being so bound has "quit his work without just cause or has been discharged for just cause in connection with his work."

As stated in *May Co.* v. *Bd. of Review* (1975), 49 Ohio App. 2d 21, 23:

"We see no reason, as a matter of public policy, to apply a different rule solely because an employee is or is not represented by a union which participated in the formulation of company retirement policy .***"

Accordingly, I approve of and endorse employers instituting their own pension and other benefit plans for their employees in the absence of union negotiations. It is my view that in such instance the employer should not be penalized by a determination that an employee reaching the mandatory retirement age under such plan would be considered as quitting his work with just cause or being discharged without just cause.

It must be remembered that when a claim for benefit rights of an employee is approved by the Bureau of Employment Services, the compensation fund as paid in by the employer is charged according to the award. The continuing future status of this fund is indeed very much in the mind of an employer who voluntarily establishes a pension plan for his employees. Certainly, it cannot be assumed that the employer was anticipating both the contributions into the pension fund and having his Unemployment Compensation Fund account depleted by those retiring at the established mandatory age.

The record in this case makes it quite clear that claimant as well as all other employees of Gibson Greeting Cards were given notice of the contents of the company's retirement plan through publication and distribution of the pension plan handbook for employees. This pension plan became effective on January 1, 1970. Prior to the effective date of the pension plan, Gibson had a company financed profit-sharing plan. The funds from such profit-sharing plan were used to finance a portion of the pension plan when it became effective.

Employees had the option when the profit-sharing plan was discontinued, and the pension plan created, of resigning their positions and withdrawing their funds, or allowing their funds to be placed into the pension fund. This option continued to remain available thereafter. Any employee, including claimant, could have withdrawn the funds attributable to the former profit-sharing plan in a lump sum.

In 1970, claimant chose to have his profit-sharing funds put in the company pension plan and abided by that decision up to his mandatory retirement age. The record also shows that leaving the money in the retirement system greatly increased his initial sum therein. Thus, the claimant had elected to take a monthly pension pursuant to the company plan.

Therefore, based upon the above-expressed position, I would hold that a person who accepts a retirement plan which provides for mandatory retirement at a designated age is disqualified from receiving unemployment compensation benefits.

Additionally, it is my view that interpreting R. C. 4141.29 (D) (2) (a) in the manner of the majority herein would be contrary to Section 26 of Article II, Ohio Constitution, which requires that "[A]ll laws, of a general nature, shall have a uniform operation throughout the state***." The interpretation of this statute as rendered here would allow benefits to an employee retired pursuant to a non-union pension plan, while disqualifying an employee retired pursuant to a union pension plan.

A person who has reached a mandatory retirement age under a pension plan and who is receiving funds thereunder is not permanently excluded from any further participation in the Unemployment Compensation Fund if he is desirous of further employment. If the retired employee wishes to reenter the labor market and works at least 26 weeks in covered employment, pursuant to R. C. 4141.31 (A) (3), he may become eligible for unemployment benefits to be received in addition to pension benefits.

I would resolve the conflict among the appellate districts in accordance with the decision in *May Co.* v. *Bd. of Review, supra.*