MORIARITY et al., Appellees,

v.

ELYRIA UNITED METHODIST HOME; Administrator, Ohio Bureau of Employment Services, Appellant.

[Cite as *Moriarity v. Elyria United Methodist Home* (1993), 86 Ohio App.3d 502.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005357.

Decided Feb. 24, 1993.

*Gregory J. Lavelle,* for appellees.

*Lee Fisher,* Attorney General, and *Matthew J. Dolan,* Assistant Attorney General, for appellant.

COOK, Judge.

Elyria United Methodist Home ("the home") is a nursing care facility for the elderly that employs approximately two hundred fifty employees. Approximately one hundred fifty of those employees were members of the Service, Hospital, Nursing Home and Public Employees' Union, Local 47 ("Local 47"). One hundred twenty-two members of Local 47 went on an economic strike on March 22, 1988. Prior to the strike, members of Local 47 received a memorandum from the home informing them that "it is the intention of the Home to permanently replace any employee who participates in the strike immediately." That memo also stated: "any member of Local 47 may continue to work during the strike. The Home hopes that Local 47 members choose to do so." The memo also said that home would provide transportation and assistance for those members of Local 47 who wanted to cross the picket line.

The home began hiring permanent replacements on the first day of the strike. The hiring of replacements was an ongoing process. During the strike, eleven members of Local 47 crossed the picket line and were returned to work. No members of Local 47 were refused jobs during the strike.

On May 12, 1988, a settlement agreement was signed and the strike ended. Seventy-one of the one hundred eleven members still on strike were returned to work. The remaining employees were put on a preferential recall list, pursuant to the settlement.

The one hundred eleven striking members of Local 47 filed claims for unemployment compensation for the weeks of April 16 through May 14. The Administrator of the Ohio Bureau of Employment Services ("Administrator") granted these claims. The home requested reconsideration of the Administrator's decision. Pursuant to R.C. 4141.28(G)(2), the cases were referred to the Unemployment Compensation Board of Review ("board") as a mass appeal. A hearing was held in January 1990 and the board issued its decision in October 1991 reversing the Administrator's determinations.

The claimants filed a timely notice of appeal to the Lorain County Court of Common Pleas. The common pleas court reversed the board's decision, finding it unlawful, unreasonable and against the manifest weight of the evidence. R.C. 4141.28(O). The Administrator [1] filed a timely notice of appeal to this court, raising a single assignment of error. We reverse.

### Assignment of Error

"The lower court's [sic] abused it's [sic] discretion reversing the unemployment compensation board of review's decision which was lawful, reasonable and supported by the manifest weight of the evidence."

The Administrator argues that the common pleas court erred by reversing the board's decision. He contends that the claimants' unemployment was due to a labor dispute other than a lockout and, therefore, under R.C. 4141.29(D)(1)(a), they were disqualified from receiving unemployment benefits.

"The function of the court of common pleas, in determining whether the board's decision is against the manifest weight of the evidence, necessarily involves the exercise of sound discretion. Accordingly, an order of the court of common pleas based upon a determination of the manifest weight of the evidence, may be reversed only upon a showing that the court abused its discretion. See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 376, 262 N.E.2d 685]. In this context, the meaning of the term 'abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong." *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161–162, 11 OBR 242, 244, 463 N.E.2d 1280, 1283. See, also, *Lorain City Bd. of*

---

1. R.C. 4141.28(O) states that any interested party, as defined in R.C. 4141.01(I), may file an appeal of the board's decision to the court of common pleas. R.C. 4141.01(I) defines the Administrator as an interested party.

*Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–268; *Galloway v. Unemp. Comp. Bd. of Review* (July 5, 1990), Summit App. No. 14404, unreported, at 6, 1990 WL 95703.

R.C. 4141.29(D)(1)(a) states:

" \* \* \* no individual may \* \* \* be paid benefits under the following conditions:

"(1) For any week with respect to which the administrator finds that:

"(a) His unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which he is or was last employed; and for so long as his unemployment is due to such labor dispute."

" 'The [unemployment compensation] act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' " *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 14, 482 N.E.2d 587, 589, quoting *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 52, 399 N.E.2d 76, 79. There are several policy reasons behind the disqualification for unemployment compensation for those involved in a labor dispute. First, a striking employee's unemployment has resulted from his agreement to go out on strike and he is not willing to work. Second, as the sole contributor to the unemployment compensation fund, an employer should not have to finance a strike against itself. Annotation (1975), 63 A.L.R.3d 88, 105–106. Last, to preserve neutrality, the state should stand aside in order that the labor dispute may not be financed through unemployment compensation. *Id.*

We are required to determine whether the disqualification provision of R.C. 4141.29(D)(1)(a) is applicable in this case. In *Baugh v. United Tel. Co.* (1978), 54 Ohio St.2d 419, 422–424, 8 O.O.3d 427, 429–430, 377 N.E.2d 766, 767–769, the Ohio Supreme Court stated:

"The disqualification provision of R.C. 4141.29(D)(1)(a) applies only if 'unemployment was *due to* a labor dispute.' We find that the words '*due to*' mean '*caused by.*' They do not mean merely 'occurring during the course of.' Thus, the element of causation is indispensable. Hence, the vital question is not whether the unemployment occurred in the course of the labor dispute, but whether the unemployment was caused by the labor dispute.

" \* \* \*

"Accordingly, we find that the General Assembly did not intend that the statutory disqualification from unemployment compensation benefits contained in

R.C. 4141.29(D)(1)(a) be applicable if, during the course of a *bona fide* labor dispute, the employer terminated the employee status and thereby caused the unemployment. In such an instance, although the labor dispute directly caused the initial unemployment, the statutory disqualification terminated with the severance of the employee status. At that moment in time the direct cause of the unemployment became the act of the employer. From then on the employer's action and not the labor dispute was the proximate cause of unemployment." (Emphasis *sic.*)

Thus, we must determine whether the employer's action caused the termination of the claimants' status as employees. *Baugh, supra,* at 424, 8 O.O.3d at 429, 377 N.E.2d at 769. Contrary to the claimants' interpretation of *Baugh,* that case does not stand for the proposition that an employer terminates striking employees by the mere act of hiring replacements. *Hi–State Beverage Co. v. Ohio Bur. of Emp. Serv.* (1991), 77 Ohio App.3d 633, 642, 603 N.E.2d 274, 280. "The syllabus of *Baugh* has the operative clause, ' * * * preventing any volition on the part of said employee to return to work * * * ' as a qualifier to the act of hiring permanent replacement employees." *Id.,* quoting *Baugh, supra.* In *Natl. Labor Relations Bd. v. MacKay Radio & Tel. Co.* (1938), 304 U.S. 333, 346, 58 S.Ct. 904, 911, 82 L.Ed. 1381, 1390, the United States Supreme Court stated that the hiring of permanent replacement workers does not in and of itself result in termination of the employees on strike. See, also, *Hi–State, supra,* 77 Ohio App.3d at 643, 603 N.E.2d at 281.

In *Baugh,* union members commenced an economic strike against their employer in January 1972. The employer then mailed a letter, dated May 25, 1972, to each striking employee stating that an impasse existed and unless the striking employees returned to work by June 1, 1972, the company would commence hiring permanent replacement employees. *Baugh, supra,* 54 Ohio St.2d at 419–420, 8 O.O.3d at 427–428, 377 N.E.2d at 767. Shortly after the June 1 deadline, each striking employee received a second letter advising that he or she had been permanently replaced. The court held that the labor law disqualification did not apply because the employer's act of permanent replacement prevented any volition on the part of the workers to return to work.

In this case, prior to the strike, the home informed the striking employees that it intended to permanently replace strike participants immediately. The home began hiring permanent replacements when the employees went out on strike. All of the striking employees were not replaced immediately. Replacement of employees was an ongoing process. Employees were never informed that they had been replaced; they did not receive a second letter informing them that they had been replaced as did the employees in *Baugh.* Instead, employees were informed that they could work during the strike and eleven employees who had

crossed the picket line mid-strike were returned to work. At the end of the strike, seventy-one employees were returned to work.

Applying the proximate causation test of *Baugh*, we agree with the board's finding that the hiring of replacements was not the proximate cause of the striking employees' unemployment. The claimants have not shown that the employer's action in hiring some permanent replacements prevented any volition on each of the claimants' part to return to work. Unlike the employees in *Baugh*, these claimants were not informed that they were permanently replaced. None of the claimants herein sought to return to work during the time period in question nor have they shown that they would have been refused work had they attempted to return. In fact, those employees who did attempt to return to work during the strike were given jobs.

Further evidence that the claimants were not terminated from their jobs by the home is: (1) the home informed the claimants that they would be able to return to work after the strike if a position was available, or as positions became available; (2) those employees who were not returned to work immediately after the strike were placed on a preferential recall list and (3) seventy-one employees were returned to work immediately following the strike. See *Hi–State, supra,* 77 Ohio App.3d at 642–643, 603 N.E.2d at 280–281.

Each claimant had the burden of showing that he was entitled to unemployment compensation. *Smith v. Unemp. Comp. Bd. of Review* (June 25, 1992), Franklin App. No. 92AP–276, unreported, 1992 WL 142389. None of the claimants has shown that the home's actions terminated his employment status thereby becoming the direct cause of his unemployment preventing any volition on his part to return to work. Accordingly, we find that the common pleas court abused its discretion by reversing the decision of the board which was lawful, reasonable and supported by the evidence. R.C. 4141.28(O).

The assignment of error is well taken. The judgment of the trial court is reversed. The case is remanded to the common pleas court with instructions to remand to the Ohio Unemployment Board of Review for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., and CACIOPPO, J., concur.