MOORER et al., Appellees,

v.

SUMMIT COUNTY CHILDREN SERVICES BOARD et al., Appellants.

[Cite as *Moorer v. Summit Cty. Children Serv. Bd.* (1993), 91 Ohio App.3d 812.]

Court of Appeals of Ohio,
Summit County.

No. 16111.

Decided Nov. 17, 1993.

*Lawrence Vuillemin,* for appellees.

*Milliser & Nobil, Harley Kastner* and *Keith Pryatel,* for appellants.

*Lee Fisher*, Attorney General, and *Thomas Burns*, Assistant Attorney General, for appellants.

Cook, Presiding Judge.

The Summit County Children Services Board ("CSB") appeals the court of common pleas' decision that CSB employees, who were members of the Communications Workers of America, Local 4546 ("the union"), and who ceased work on May 21, 1991, were eligible for unemployment compensation because they had been "locked out." CSB mainly contends that the court of common pleas failed to follow the applicable standard of law in reviewing the decision of the Unemployment Compensation Board of Review ("board"). We reverse because under a proper review, the board's decision is lawful, reasonable and supported by the evidence.

In August 1990, the union and CSB began negotiating a new collective bargaining agreement as the existing agreement, by its terms, was to expire on December 31, 1990. The parties entered into a "Ground Rules Agreement" under which their negotiations would be conducted. As of December 31, a new agreement had not been reached. The "Ground Rules Agreement" provided that the expired collective bargaining agreement would remain in effect until (1) the parties reached a new agreement, (2) the parties reached an impasse in negotiations, or (3) the union engaged in a strike.

After the expiration of the collective bargaining agreement, the employees continued to work and CSB continued giving annual employee evaluations as they were due. However, CSB suspended the merit and longevity increases which were due under the expired agreement until a new agreement was reached. On January 14, 1991, the union filed grievances concerning the deferral of the merit increases and later filed a grievance for the failure to pay longevity increases. The grievances were denied and the union filed a demand for arbitration on these issues.

Meanwhile, the employees continued to work for several months while negotiations continued. On May 10, after CSB rejected the union's most recent counterproposal, the union delivered a notice of its intent to strike on May 21. At that time, the union did not ask if its members could continue to work under the terms of the expired collective bargaining agreement, including receiving the merit and longevity increases, because it felt that CSB would not permit it. Further, the union informed its members that CSB was unwilling to seriously bargain on the issue of health care, unless the union demonstrated its resolve by going on strike. On May 21, one hundred seventy-six of the union's members participated in a work stoppage against CSB.

The participating members of the work stoppage filed for unemployment compensation. Pursuant to R.C. 4141.28(D)(1)(a), their applications were consolidated for a hearing before the Administrator of the Ohio Bureau of Employment Services ("administrator"). The administrator found that the employees were unemployed due to a lockout; therefore, they were not disqualified from receiving unemployment compensation. CSB filed an appeal with the Unemployment Compensation Board of Review ("board"). The board reversed the administrator's determinations, finding that the employees were unemployed due to a labor dispute other than a lockout; therefore, their claims were disqualified. The employees appealed to the Summit County Court of Common Pleas, which reversed the board's decision because it found that the board had no reason to reverse the administrator's determination. With its decision, the common pleas court reinstated the employees' eligibility for unemployment compensation.

CSB now appeals, raising seven assignments of error.

## Assignments of Error

"1. The lower court erred in concluding that it possessed jurisdiction to decide whether the Unemployment Compensation Board of Review committed error in reversing the decision of the Administrator of the Bureau of Unemployment Compensation.

"2. The lower court erred in failing to determine whether the Unemployment Compensation Board of Review's decision was unlawful, unreasonable, or against the manifest weight of evidence.

"3. The lower court erred in determining that it should reverse a decision by the Unemployment Compensation Board of Review which is not supported by 'relative, probative evidence.'

"4. The lower court erred in deciding that the decision by the Unemployment Compensation Board of Review could not withstand scrutiny under the appropriate standard of judicial review.

"5. The lower court erred in determining that plaintiff-appellants had sustained their burden of proof that they were 'locked out' from their positions of employment within the meaning of Ohio Revised Code Section 4141.29(D)(1).

"6. The lower court erred in substituting its judgment for that of the Unemployment Compensation Board of Review on policy matters relating to unemployment compensation benefits.

"7. The lower court erred in its determination that the Unemployment Compensation Board of Review 'ignored and misstated the record' in reversing the decision by the Administrator of the Bureau of Unemployment Compensation."

■ Essentially, with these assignments of error, CSB asserts that the common pleas court erred in reversing the board's decision because it did not appropriately review the board's decision. We agree. The common pleas court reviewed the record to determine whether the board improperly reversed the administrator's decision and found that the board erred in reversing the administrator's decision. The trial court, however, should have determined whether the board's decision was unlawful, unreasonable or against the manifest weight of the evidence. R.C. 4141.28(O). The duty of the common pleas court is to determine whether the decision of the board is supported by the law and the facts. *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 14, 482 N.E.2d 587, 589. We find, under a proper review, the board's decision is lawful, reasonable and supported by the evidence.

■ " 'The [unemployment compensation] act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' " *Id.*, quoting *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 51, 399 N.E.2d 76, 79. Each claimant has the burden of showing that he or she is entitled to unemployment compensation. *Moriarity v. Elyria United Methodist Home* (1993), 86 Ohio App.3d 502, 507, 621 N.E.2d 576, 579. CSB contends that the claimants' unemployment was due to a labor dispute other than a lockout and, therefore, under R.C. 4141.29(D)(1)(a), the claimants were disqualified from receiving unemployment benefits.

R.C. 4141.29(D)(1) states:

"(D) * * * no individual may * * * be paid benefits under the following conditions:

"(1) For any week with respect to which the administrator finds that:

"(a) His unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which he is or was last employed; and for so long as his unemployment is due to such labor dispute."

One of the reasons behind the disqualification for unemployment benefits for those involved in a labor dispute is the preservation of neutrality. "[T]he state should stand aside in order that the labor dispute may not be financed through unemployment compensation." *Moriarity, supra,* 86 Ohio App.3d at 505, 621 N.E.2d at 578.

Thus, the issue is whether the claimants were unemployed due to a lockout. If they were then they would not be disqualified for unemployment benefits. A "lockout" is defined "as a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more

desirable terms." *Zanesville Rapid Transit, Inc. v. Bailey* (1958), 168 Ohio St. 351, 354, 7 O.O.2d 119, 121, 155 N.E.2d 202, 205. It is undisputed that CSB did not actually lockout or withhold work from the claimants. Therefore, it must be determined whether a constructive lockout existed.

■ In *Bays v. Shenango Co.* (1990), 53 Ohio St.3d 132, 559 N.E.2d 740, the Supreme Court of Ohio adopted a test to determine whether there has been a constructive lockout. The test is twofold: (1) Have the employees offered to continue working under the terms and conditions of the expired agreement to avert a work stoppage? and (2) Has the employer agreed to permit work to continue under the terms and conditions of the expired agreement pending further negotiations? *Id.* at 134, 559 N.E.2d at 742.

■ In this case, the board found that the union never offered to extend the terms of the expired agreement, a constructive lockout did not exist and the claimants were, therefore, disqualified for unemployment benefits. The record in this case demonstrates that the board's decision was not "unlawful, unreasonable nor against the manifest weight of the evidence." R.C. 4141.28(O).

While it was mutually agreed in the "Ground Rules Agreement" that the expired agreement would remain in full force and effect, work continued without the merit and longevity increases for several months before the union announced that it was going to strike. Moreover, in order for the claimants to demonstrate that a constructive lockout existed, they must establish that they offered to continue work under the terms of the expired agreement. *Shenango, supra.* According to the union's president, the union did not make an offer that its members would continue to work if CSB would pay the merit and longevity increases because it thought that would be futile. Thus, the union did not comply with the first requirement of *Shenango.* In fact, the evidence supports the conclusion that the true reason the union decided to strike was because CSB would not negotiate on the health care proposal. The evidence, therefore, supports the board's conclusion that the claimants failed to show their unemployment was due to a lockout.

Having determined that the board applied the correct law and its decision was supported by the record, we find that the common pleas court abused its discretion by reversing the decision of the board.

The assignments of error are well taken and the judgment of the common pleas court is reversed. The case is remanded to the common pleas court with instruction to remand to the Ohio Unemployment Board of Review for further proceedings in accordance with this opinion.

*Judgment accordingly.*

BAIRD and REECE, JJ., concur.