Appellees-appellants, Administrator, Ohio Bureau of Employment Services and Michelina's, appeal from a judgment of the Franklin County Common Pleas Court reversing the decision of the Unemployment Compensation Board of Review denying unemployment compensation benefits to appellant-appellee, Sandra Vickers.
The facts of this case revolve around Vickers' employment relationship with Michelina's, located in Jackson, Ohio, for whom she began working in December of 1991. On Friday, March 8, 1996, Vickers simultaneously was running two pieces of machinery when a problem with one of the machines caused her difficulties. A supervisor, Jeff Melon, came out to discuss the problem. Vickers testified that Melon "got real hateful" with her as she attempted to explain to Melon that the problem was not with her but with the machine. (Nov. 18 Tr. 6.) Melon yelled at her, and she responded by asking Melon, "you want to do this job?" Id. Melon told her, "No, that's what the hell we pay you for." Id. Vickers then told him, "Well then don't come out here and tell me how to do my god-damn job." Id. With that, the argument was over.
Later that day Vickers was brought to a meeting with two supervisors to discuss what had happened. At some point in that meeting, one supervisor said something about management, to which Vickers responded "Well, that sucks." No immediate disciplinary action was taken.
After resuming work, Vickers was called to another meeting on Tuesday, March 12. At the meeting, Mike Evans, a supervisor, asked Vickers if at the prior meeting she had said that management "sucked." Vickers told him that she did not. He then told her that she was suspended indefinitely due to misconduct on the worksite.
On Thursday, March 14, another meeting was held at which Vickers allegedly was told that she could return to her job only if she would talk to the new people at the workplace, telling them Michelina's was a good place to work and they would be treated nicely. Vickers said that she would be unable to do so because "there was no way I was going to fib to them new people." Id. at 10. Because she was unable to comply with the condition imposed upon her return, Vickers felt that she had been terminated and she never returned to work at Michelina's.
A March 16 letter by one of Vickers' supervisors purported to outline for Vickers the March 14 meeting and to set forth the conditions that would allow Vickers to return to work: to never engage in insubordination again, to express opinions to management in "a controlled environment," and to discuss any problems rationally with management. The letter did not require Vickers to speak favorably about Michelina's. Vickers denies receiving the March 16 letter. Because Vickers never returned to work, Vickers was subsequently terminated.
On March 12, 1996, Vickers applied for unemployment benefits pursuant to R.C. 4141.28. An initial determination found that Vickers quit without just cause and was not entitled to benefits. The decision, affirmed upon reconsideration, was appealed to the Unemployment Compensation Board of Review ("board"). A hearing was held on November 18, 1996, at which Vickers testified to her understanding of the conditions which would allow her return to work, including speaking favorably to new employees about Michelina's. No one from Michelina's testified at the hearing. The board reversed the prior decision and found that Vickers was terminated without just cause and was entitled to benefits.
The board, however, allowed a further appeal, and another hearing on the matter was held on April 3, 1997. At that hearing, Vickers again testified to her understanding of the conditions imposed upon her return to work. Michelina's introduced the March 16 letter to refute Vickers' claim that she was required to talk favorably about Michelina's to new employees in order to return to work. After the hearing, the board reversed its earlier decision and determined that Vickers misstated her return to work agreement. Instead, it relied on the March 16 letter, noting that the letter did not require that Vickers talk positively about her employer. Finding that the March 16 letter constituted her return to work agreement and that a reasonable person would have complied with the requirements in that letter, the board determined that Vickers quit without just cause, and denied benefits.
Vickers appealed the board's decision to the Franklin County Common Pleas Court, which reversed the decision and granted benefits. The common pleas court found that the decision of the board was not supported by sufficient evidence. Appellants appeal, assigning the following error:
 THE LOWER COURT ERRED WHEN IT REVERSED THE REVIEW COMMISSION'S DECISION, WHICH WAS NOT UNLAWFUL, UNREASONABLE, OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
While a reviewing court in cases of this nature is not permitted to make factual findings or to determine the credibility of witnesses, it has the duty to determine whether the board's decision is supported by evidence in the record.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694. Reviewing courts may reverse "just cause" decisions if they are unlawful, unreasonable, or against the manifest weight of the evidence. Id.; R.C. 4141.28(O).
A person discharged for just cause in connection with work is not entitled to unemployment compensation. R.C.4141.29(D)(2)(a). However, an employee is entitled to unemployment compensation if the employee quit work with just cause. Id. Just cause has been defined as "* * * '* * * that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" Irvine v.Unemployment Comp. Bd. of Review (1985), 19 Ohio St.3d 15, 17, citing Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12. Whether just cause exists depends on the unique factual circumstances of the particular case. Id. The claimant has the burden of proving entitlement to unemployment compensation benefits under the statutory provisions, including the existence of just cause for quitting work. Id.; Shannon v. Bur.of Unemp. Comp. (1951), 155 Ohio St. 53.
Vickers' evidence consisted of her own testimony in which she said that a condition of her return to work was her speaking favorably about Michelina's to its new employees. Michelina's only evidence was the March 16 letter that did not mention that condition. The board concluded that because the letter did not mention the condition, Vickers must have misunderstood the conditions for her return to work. To discredit Vickers' testimony regarding the return to work condition, the board had to rely exclusively on the March 16 letter, which is hearsay evidence. Evid.R. 801(C).
In an effort to ascertain pertinent information, an administrative hearing officer has discretion to accept or reject evidence, and to choose whether to apply technical rules or procedure. Simon v. Lake Geauga Printing Co. (1982), 69 Ohio St.2d 41; R.C. 4141.28(J); Nordonia Hills Bd. of Edn. v. Unemp.Comp. Bd. of Review (1983), 11 Ohio App.3d 189. Thus, in general, the use of hearsay evidence does not warrant reversing the board's decision, since the board need not apply stringent rules in determining the admissibility of evidence into the record. Simon, supra. However, where the sworn testimony of a witness is contradicted only by hearsay evidence, to give credibility to the hearsay statement and to deny credibility to the claimant who is testifying in person is unreasonable.Taylor v. Bd. of Review (1984), 20 Ohio App.3d 297, 299; Butlerv. Art Iron, Inc. (Mar. 23, 1989), Franklin App. No. 87AP-1151, unreported.
Here, no witness of the employer testified with any personal knowledge of the facts. Indeed, Clara Ridgeway, the only witness to testify on behalf of Michelina's, stated she had no personal knowledge of what was said at the March 14 meeting dealing with Vickers' return to work. While appellants could have called witnesses to testify from their personal knowledge of that meeting, they failed to call any witnesses at any of the hearings in this case. Instead, the only evidence presented to contradict Vickers' testimony was the March 16 letter, and contrary to the cited authority, the board expressly gave it more credibility by finding it constituted Vickers' return to work agreement.
In Green v. Invacare Corp. (May 26, 1993), Lorain App. No. 92 CA-5451, unreported, a case very similar to the facts here, the claimant testified and had his testimony refuted "almost solely" by hearsay evidence the employer presented. The Green
court noted that "[t]o discredit [claimant's] testimony, the referee must have relied almost entirely on the hearsay statements offered by [the employer's] witnesses." Id. Citing the rule in Taylor, the court found no reversible error in the common pleas court's finding the decision of the board to be unreasonable. See, also, The Western Southern Life Ins. Co.v. Ohio Bureau of Emp. Serv. (Apr. 19, 1989), Hamilton App. No. C-880084, unreported (finding no error in granting deference to the claimant's testimony over hearsay concerning the documentation submitted on behalf of the employer). Voss v.Bailey's Tree Landscape Serv. (Oct. 31, 1997), Sandusky App. No. S-97-020, unreported (finding that claimant's sworn testimony should have been afforded greater weight and credibility in finding just cause when the only contradictory evidence presented was all hearsay evidence).
Under the rule in Taylor,the board here acted unreasonably when it gave more weight to the March 16 letter over Vickers' sworn testimony.
Moreover, because Vickers' testimony supports a finding that she quit with "just cause," the common pleas court did not err in reversing the board's decision as against the manifest weight of the evidence. Any determination of just cause must be liberally construed in favor of the legislative purpose "to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." Salzl v.Gibson Greeting Cards (1980), 61 Ohio St.2d 35, 39; R.C.4141.46.
An employer may require specific standards of conduct and then discharge an employee who violates these standards.Piazza v. Ohio Bur. Of Emp. Serv. (1991), 72 Ohio App.3d 353,357. When, however, such standards force an employee to lie, an employee may be said to have quit with just cause in refusing to follow the standards. Vickers testified that Michelina's required her to speak well about her employment to new employees as a condition of her return to work. Vickers said compliance with that request would force her to lie, something that she was unwilling to do. Under those conditions, Vickers quit with just cause; the common pleas court did not err in finding the board's decision to the contrary to be against the manifest weight of the evidence.
For the foregoing reasons, appellants' assignment of error is overruled and the judgment of the common pleas court is affirmed.
Judgment affirmed.
BOWMAN and TYACK, JJ., concur.