JUDGMENT: Judgment affirmed
ATTORNEYS:
 OPINION
This is an appeal from a judgment of the Seneca County Court of Common Pleas affirming the finding of the Ohio Unemployment Compensation Board of Review ("Board") that members of Appellant, Local Union No. 911, United Food and Commercial Workers Union, were not entitled to unemployment compensation during a labor dispute with Appellee, Farmland, Inc. ("Farmland"). For the following reasons, we affirm the judgment of the trial court.
The underlying facts and procedural history of the case are as follows. Farmland maintains two meat-processing plants in northwest Ohio. One of the plants is located in Carey, Ohio, and employs approximately 40 hourly employees. The other plant is located in New Riegel, Ohio, and employs approximately 230 hourly employees. At the time of the dispute most, if not all, of the hourly employees were members of the same bargaining unit, Local Union No. 911, and had been working pursuant to a collective bargaining agreement.
In early April 1998, Farmland and the Union entered into negotiations for a new collective bargaining agreement to replace the existing contract set to expire on April 18, 1998.[1]
Throughout this process, the parties held approximately six or seven negotiation sessions.
On April 17, 1998, one day before the contract was set to expire, Farmland submitted a new proposal to the Union. The new contract included four separate wage increases of twenty-five cents per hour for each year of the four-year contract. The contract also offered a twenty-cents per hour contribution to the employee's pension plan for each year of the new contract. In order to help offset a new $10 per week mandatory employee contribution for dental and health insurance, each employee was also offered a cash bonus of $500. The new contract also sought to modify employee overtime.
A meeting was held by the Union to discuss and vote upon the new contract. By an overwhelming majority, the Union voted to reject the new proposal. The Union had also taken a strike vote and was willing to go out on strike, but the employees agreed to work under the terms and conditions of the former contract while negotiations continued with Farmland. Farmland, at the Union's request, also agreed to extend the terms and conditions of the expired contract on a day-to-day basis while the parties continued to negotiate a settlement. The employees then returned to work under the terms and conditions of the former contract.
On or about May 14, 1998, Jeff Stephens, a business agent for the Union, informed Farmland that the Union required a new proposal by midnight of May 16, 1998, or the employees would go on strike on the morning of May 18, 1998. Despite the deadline, on the afternoon of May 15, 1998, both the New Riegel, Ohio, facility and the Carey, Ohio, facility experienced a work stoppage.[2]
The employees of the Union eventually filed for unemployment benefits. A hearing was held on July 6, 1998. On July 23, 1998, a hearing officer determined that the employees were not entitled to receive unemployment compensation because they were unemployed due to a labor dispute other than a lockout. The Union appealed the decision to the Unemployment Compensation Board of Review. The Board, however, disallowed an application for further appeal, and the Union appealed to the Seneca County Court of Common Pleas. The trial court affirmed the decision of the Board on April 22, 1999.
The Appellant now appeals, asserting the following sole assignment of error.
 ASSIGNMENT OF ERROR The trial court's denial of unemployment constituted reversible error since it was unlawful, unreasonable, and against the manifest weight of the evidence.
The Union asserts in its sole assignment of error that the trial court erred in finding the Board's decision lawful, reasonable, and not against the manifest weight of the evidence. Specifically, the Union maintains that the Board's decision that the employees were unemployed due to a labor dispute other than a lockout was incorrect as a matter of law. For the following reasons, we do not agree.
We first note that R.C. 4141.28(O)(1) sets forth the standard of review to be applied in unemployment compensation cases. The statute reads in pertinent part, as follows:
 If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision.
The Ohio Unemployment Compensation Act, R.C. 4141.01 et seq., "does not create distinctions between the scope of review of common pleas courts and appellate courts." Tzangas, Plakas 
Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694,696-97. In reviewing the Board's decision, a reviewing court must apply the same standard of review as the lower court. Thus, we may reverse the Board's decision only if it is unlawful, unreasonable, or against the manifest weight of the evidence. Id. at 697.[3]
It is well settled that the objective of R.C. 4141.01 et seq., is to ameliorate the burdens on employees suffering from involuntary unemployment and to provide them with short-term financial relief. Baker v. Powhatan Mining Co. (1946), 146 Ohio St. 600. R.C. 4141.46 mandates that the Act be liberally construed to favor the persons benefited. Adamski v. Ohio Bur. of Unempl. Comp. (1959), 108 Ohio App. 198, 204. Notwithstanding R.C. 4141.46, a claimant has the burden of establishing a right to unemployment compensation. Irvine v. Unemployment Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15; Moriarity v. Elyria United Methodist Home (1993), 86 Ohio App.3d 502, 507.
With respect to the applicable law, R.C. 4141.29(D)(1)(a) provides in pertinent part, as follows:
 (D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:
 (1) For any week with respect to which the administrator finds that:
 (a) The individual's unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state or owned and operated by the employer by which the individual is or was last employed; and for so long as the individual's unemployment is due to such labor dispute.
Thus, pursuant to the foregoing statute, the entitlement to unemployment compensation benefits generally hinges on whether the unemployment is due to a labor dispute other than a lockout.
Generally, a labor dispute has been defined by the Supreme Court of Ohio as " `a controversy between employer and employees concerning wages, working conditions or terms of employment.' " Bays v. Shenango (1990), 53 Ohio St.3d 132, 134, quoting Leach v. Republic Steel Corp. (1964), 176 Ohio St. 221, 223-24. Meanwhile, a strike is a " `cessation of work by employees in an effort to obtain more desirable terms with respect to wages, working conditions, etc.' " Id. The Court in Bays, supra, defined a "lockout" as "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." Id. at 133. A lockout, however, "is not confined to an actual physical closing of the place of employment." Id. at 134.
The Court in Bays, supra, set forth the so-called "status quo" test to be employed in determining whether a work stoppage is due to a lockout. The Court adopted the test from the Pennsylvania case of Erie Forge Steel Corp. v. Unemployment Comp. Bd. of Rev. (1960), 400 Pa. 440 ("Vrotney Unemployment Compensation Case"). The test is as follows:
 T]he sole test under * * * the Unemployment Compensation Law, * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a `lockout' and the disqualification of unemployment compensation benefits in the case of a `stoppage of work because of a labor dispute' does not apply.
Bays, 53 Ohio St.3d at 134-35, quoting Erie Forge Steel Corp.,400 Pa. at 443-445.
Thus, under the foregoing test, the Board and the Adminstrator must first determine " `which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing.' " Id. at 135, quoting Philco Corp v. Unemployment Comp. Bd. of Rev. (1968), 430 Pa. 101, 103. The employees need only offer to continue operations under the status quo for a reasonable period of time pending further negotiations; likewise, the employer need only accept the employees' offer to continue operations under the status quo for a reasonable period of time pending further negotiations. Id. at 134; see, also, Alsip v. Klosterman Baking Co. (1996), 113 Ohio App.3d 439; Anderson v. Union Camp Corp. (Oct. 18, 1996), Tuscawaras App. No. 96AP030024, unreported.
The primary issue now before this Court is which party first deviated from the status quo after the contract technically expired, but while negotiations were continuing. The Union initially maintains that Farmland breached the status quo by terminating three provisions of the pre-existing collective bargaining agreement.
At the hearing of July 6, 1998, the Union introduced into evidence a letter dated April 24, 1998, informing the Union's business agent that although Farmland did not intend to lock out its employees and would operate the plant as usual, the company was unwilling to extend certain provisions of the pre-existing collective bargaining agreement beyond April, 24, 1998. In particular, Farmland stated that it would no longer recognize the agreement's arbitration provision, no strike/no lockout provision, and dues check-off provision.
Despite the Union's assertion to the contrary, we do not find that the failure of Farmland to recognize the foregoing provisions constitutes a breach of the status quo. It is well settled that the foregoing provisions, unless otherwise stated in the contract itself, do not remain in effect and terminate by operation of law upon the expiration of a collective bargaining agreement. See, e.g., Litton Fin. Printing Div. v. N.L.R.B. (1991), 501 U.S. 190,199. A review of the record establishes that the foregoing provisions did not retain legal significance upon the expiration of the contract. Thus, Farmland's failure to honor these provisions was not a breach of status quo. Moreover, in a letter dated April 29, 1999, Farmland reiterated that it was willing to "maintain the status quo with respect to the terms and conditions of employment during the period there is no contract in effect." For all of the above reasons, Appellant's first argument is without merit and is not well-taken.
The Union further maintains that a lockout occurred on May 15, 1998, when the employees of the Carey, Ohio, facility were forced by management to leave the plant while in the middle of their work shifts. The Union asserts that its members were forced from the plant shortly after a work stoppage occurred at the New Riegel, Ohio, plant. The Union also contends that when the employees of the Carey, Ohio, facility returned to the plant the following Monday, the doors were securely locked.
Upon a review of the record, we find otherwise. Specifically, there is adequate evidence in the record that on May 15, 1998, the Farmland employees conducted a voluntary work stoppage at the New Riegel, Ohio, facility, and later performed a similar voluntary walkout at the Carey, Ohio, facility. Moreover, given that the employees of the two plants were members of the same bargaining unit, the voluntary work stoppage at the New Riegel, Ohio, facility had a binding effect upon all of the Union's employees. For the foregoing reasons, there is ample evidence before this Court establishing a breach of the status quo by the Union and that what had occurred on May 15, 1998, was a labor dispute other than a lockout.
For the aforementioned reasons, we find there is ample evidence in the record establishing that the Board's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.
Accordingly, Appellant's assignment of error is not well-taken and is overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
SHAW, J., concurs.
[1] The collective bargaining agreement had been effect since April 16, 1995.
[2] It appears from the record that the majority of the New Riegel plant employees performed a walkout, while two-thirds of the Carey plant employees performed a walkout later that afternoon.
[3] We note that the trial court erred in making its own independent factual findings. It is well-settled that factual determinations are the exclusive province of the board of review. Hall v. American Brake Shoe Co. (1968), 13 Ohio St.2d 11, 14. Further, as a reviewing court, we must not make factual findings or assess a witness' credibility. Tzangas, Plakas Mannos,73 Ohio St. 3d at 696. This Court may determine only whether the evidence support's the Board's decision. Id. at 696-97.