OPINION
{¶ 1} Appellant, LaPhaun Bennett, appeals from a Mahoning County Common Pleas Court judgment that affirmed the Unemployment Compensation Review Commission's decision that she was not entitled to unemployment compensation.
 {¶ 2} Appellant was employed at American Paper Group (American Paper) from April 2001 until she was terminated in July 2002 as a machine operator. Appellant applied for unemployment compensation, but was denied. The case was then reviewed before the Unemployment Compensation Review Commission (commission). The commission found that appellant was discharged for just cause and, therefore, disallowed benefits.
 {¶ 3} Appellant filed an appeal in the trial court from the commission's decision on January 14, 2003. A magistrate considered appellant's appeal. In his decision, the magistrate found the following. The commission found appellant's unexcused absences from work and other violations of American Paper's attendance policy resulted in her discharge for just cause. The magistrate found that the commission's decision was supported by competent, credible evidence. He further noted that appellant's unexplained absences and policy violations demonstrated her disregard for her employer's best interests.
 {¶ 4} Appellant subsequently filed objections to the magistrate's decision. The trial court entered a judgment stating that appellant did not comply with Civ.R. 53(E)(3) because she did not state the grounds for her objections with any particularity. Appellant filed a notice of appeal from that decision. This court determined that the trial court had not yet entered a final judgment and gave the parties 30 days to properly invoke our jurisdiction. As a result the trial court entered a judgment entry stating again that appellant's objections did not comply with Civ.R. 3(E)(3) and adopting the magistrate's decision upholding the commission's decision.
 {¶ 5} Appellant lists twelve assignments of error. However, she fails to make arguments to support many of them. We will address appellant's assignments of error in two groups. Appellant's first, second, sixth, seventh, and eleventh assignments of error state:
 {¶ 6} "Was [sic.] claimant/appellant's constitutional rights violated when the unemployment compensation review commission erred when clearly it did not go by the facts and voluminous evidence presented by claimant/appellant?"
 {¶ 7} "was [sic.] claimant/appellant's constitutional rights to due process violated when she was discharged for absenteeism and the facts in the record reflect differently?"
 {¶ 8} "Was [sic.] claimant/appellant's constitutional rights violated when testimonies in the transcript clearly state that points should not have been but were issued against her in discharging her?"
 {¶ 9} "Was [sic.] claimant/appellant's constitutional rights to due process violated when her past employer alleged she had (8) points against her in 2001 and totaled them up to discharge her?"
 {¶ 10} "Was there abuse of discretion when the hearing officer allowed the appellees and their observer to go outside the hearing room? Was there abuse of discretion and unlawfulness when the lower courts didn't review the case and just upheld the decision of the hearing officer to whether it was just or not?"
 {¶ 11} These assignments of error suggest that the commission's decision was against the manifest weight of the evidence. They also suggest that the trial court abused its discretion in upholding the commission's decision.
 {¶ 12} Appellant's brief is an attempt to rehash the facts and to provide this court with additional "evidence" that she wants us to consider. Appellant also attempts to explain why she was late for work or absent on various occasions.
 {¶ 13} A claimant bears the burden of proving her entitlement to unemployment compensation benefits. Kosky v. Am. Gen. Corp., 7th Dist. No. 03-BE-31, 2004-Ohio1-541, at ¶ 9. An unsatisfied claimant may appeal the commission's decision to the trial court. R.C. 4141.282(A). The trial court shall reverse, vacate, modify, or remand the commission's decision if it finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). If the court does not find that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, then the court shall affirm the decision. Id.
 {¶ 14} A party unsatisfied with the trial court's decision may appeal to the court of appeals. The appellate court, like the trial court, is limited to reviewing whether the decision is supported by evidence in the record. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, 696, 653 N.E.2d 1207, citing Irvine v. Unemp. Comp.Bd. of Review (1985), 19 Ohio St.3d 15, 18, 482 N.E.2d 587, 590. We can only reverse a "just cause" determination by the commission if it is unlawful, unreasonable, or against the manifest weight of the evidence. Id.
 {¶ 15} Appellant had the burden to prove that she was entitled to unemployment benefits. See Irvine, 19 Ohio St.3d at 17. The only way she could prove that she was entitled to benefits would be to prove that she was not fired for just cause. Pursuant to R.C. 4141.29(D)(2)(a), a claimant is not entitled to benefits if she was discharged for just cause in connection with her work. The Ohio Supreme Court has examined what constitutes "just cause" in the unemployment compensation area as follows:
 {¶ 16} "The term `just cause' has not been clearly defined in our case law. We are in agreement with one of our appellate courts that `[t]here is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12,335 N.E.2d 751.
 {¶ 17} "The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is `to enable unfortunate employees, who become and remain involuntarily
unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' (Emphasis sic.) Leach v.Republic Steel Corp. (1964), 176 Ohio St. 221, 223, 199 N.E.2d 3; accordNunamaker v. United States Steel Corp. (1965), 2 Ohio St.2d 55, 57,206 N.E.2d 206. Likewise, `[t]he act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' Salzl v. Gibson Greeting Cards (1980),61 Ohio St.2d 35, 39, 399 N.E.2d 76." Irvine, 19 Ohio St.3d at 17.
 {¶ 18} The commission found that appellant was discharged for just cause and, therefore, denied her unemployment benefits. Both the magistrate and the trial court found that competent, credible evidence supported the commission's decision. We must examine the record from the commission's hearing to determine if the evidence presented supports the commission's decision.
 {¶ 19} Appellee, the Director of the Ohio Department of Job and Family Services, called one witness, Jeri Westover. Westover is the personnel manager at the American Church Plant, which is a division of American Paper where appellant worked. Westover testified that she and Linda Jones, the human resources administrator, made the decision to fire appellant because of her excessive absenteeism and tardiness. (Tr. 6).
 {¶ 20} Westover testified regarding the attendance policy at American Paper. The attendance policy works on a point system. Points are assessed for occurrences of calling off, failing to show up for work, leaving early, coming in late, and leaving in the middle of a shift and then returning later. (Tr. 7). The more severe the occurrence, the more points the employer assesses. For instance, one point is assessed for showing up late for work. (Tr. 7). However, eight points are assessed for failing to show up for work without calling off. (Tr. 7). Additionally, three points are deducted for every consecutive four-week period during which an employee has no occurrences. (Tr. 8). If an employee accumulates 18 points, she is terminated. (Tr. 22). If an employee presents a doctor's excuse for an occurrence, that is taken into consideration. (Tr. 10). However, it is up to the supervisor's discretion whether to accept the doctors' excuses if they are excessive. (Tr. 10). Westover testified that appellant was familiar with the point system. (Tr. 9).
 {¶ 21} Westover testified that appellant was scheduled to work Monday through Friday from 4:00 p.m. to 12:00 a.m. (Tr. 5). Frequently, when appellant called off and presented a doctor's note, her doctor's appointment had been during the day and did not state that she was unable to work her night shift. (Tr. 10). Consequently, appellant's supervisor began giving appellant points for calling off even though she sometimes presented a doctor's note. (Tr. 10).
 {¶ 22} Westover then explained how appellant accumulated 18 points in 2002, resulting in her termination. At the beginning of 2002, appellant had eight points carried over from the previous year. (Tr. 12). Appellant initially did not dispute this. (Tr. 41, 68, 82). However, when she was re-called, she testified that she took issue with some of the points. (Tr. 81-82).
 {¶ 23} On January 4, appellant was absent so she was assessed three points bringing her total points to 11. (Tr. 12). On January 9, appellant was late, so she was assessed one point bringing her total to 12. (Tr. 12-13). At that point, she was issued a written warning. (Tr. 13; Employer's Exh. 4). Appellant was next absent on January 14-18, so she was assessed three points raising her total to 15. (Tr. 13). Consequently, she was issued a three-day suspension and was informed that another occurrence would result in her termination. (Tr. 13; Employer's Exh. 4). On January 22, appellant was late and was assessed one point bringing her total to 16. (Tr. 13). Appellant then went four weeks without an occurrence, so three points were deducted from her total lowering it to 13. (Tr. 13). On March 15, appellant left early so she was assessed one point raising her total to 14. (Tr. 13). Next, appellant was absent from April 8-10, so she was assessed three points bringing her total to 17. (Tr. 14). Appellant then had four weeks with no occurrences, so three points were deducted reducing her total to 14. (Tr. 16). On May 30, appellant left early bringing her total to 15. (Tr. 16). On June 10, appellant was absent so she was assessed three points bringing her total to 18. (Tr. 16). At this point, Westover and Jones decided to terminate appellant because she had reached 18 points. (Tr. 22).
 {¶ 24} In addition to the warning discussed above, Westover testified regarding other warnings to appellant. Appellant was issued a verbal warning about her absenteeism in October 2001. (Tr. 25). And Jones called appellant to talk to her about her points and explained that she was nearing the amount of points for termination. (Tr. 25-26).
 {¶ 25} Appellant was the only other witness to testify. She acknowledged that she was absent and/or late on the days Westover indicated. (Tr. 41, 44, 46-47, 49-53). She attributed her absences to such things as going to court with her daughter, swollen glands, surgery, her goddaughter's graduation, and car problems. (Tr. 41-42, 44, 49, 51-53). She stated that she submitted doctors' excuses for her health related absences. She also stated that she was familiar with the point system. (Tr. 69).
 {¶ 26} Appellant further testified that no one ever told her she was in jeopardy of being terminated. (Tr. 62). However, she signed a warning stating that she was in jeopardy of termination. (Employer's Exh. 4).
 {¶ 27} Finally, appellant presented doctors' notes for some of her absences. However, as the hearing officer noted, the doctors' notes did not say that appellant was unable to report to work. They simply stated that she was seen that day. (Claimant's Exhs. 2, 8).
 {¶ 28} Given this evidence, the commission's decision is supported by competent, credible evidence. Tardiness and the failure to report to work provide an employer with just cause for dismissing an employee. Higginsv. Patterson Pools (Sept. 26, 2000), 10th Dist. No. 99AP-1394; Kiikka v.Administrator, Ohio Bur. of Employ. Serv. (1985), 21 Ohio App.3d 168,169, 486 N.E.2d 1233. Appellant was aware of American Paper's point system policy for absenteeism and tardiness. Appellant knew she was accumulating points and that she was nearing the stage where she would be terminated. She was given verbal and written warnings and even served a three-day suspension due to her attendance problem. And although she presented doctors' notes for some of her absences, the notes merely stated that appellant was seen by the particular doctor on a particular day. They did not state that appellant could not return to work for her shift. Since appellant's shift was from 4:00 p.m. until 12:00 a.m., she would have been able to attend her doctors' appointments during the day and still report to work by 4:00 p.m. Thus, because the evidence supports the commission's just cause finding for termination, we cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable.
 {¶ 29} Accordingly, appellant's first, second, sixth, seventh, and eleventh assignments of error are without merit.
 {¶ 30} Appellant's third, fourth, fifth, eighth, ninth, tenth, and twelfth assignments of error state:
 {¶ 31} "Was [sic.] claimant/appellant's constitutional rights violated when it [sic.] allowed her past employer supervisor medical leave and deny [sic.] claimant/appellant the same rights?"
 {¶ 32} "Was [sic.] claimant/appellant's constitutional rights to due process violated when she had to work on president's day, which is a paid company holiday, and was not paid for it?"
 {¶ 33} "Was [sic.] claimant/appellant's constitutional rights violated when the record clearly shows that she had two vacation days left and was not allowed to use them towards a medical leave?"
 {¶ 34} "Was [sic.] claimant/appellant's constitutional rights violated when the review commission allowed appellee's [sic.] and one who was not sworn in to go outside in the hallway to confer over objection by claimant/appellant's attorney?"
 {¶ 35} "Was [sic.] claimant/appellant's constitution [sic.] rights to due process of law violated when the records of the transcript reveal that claimant/appellant was terminated on July 1, 2002, yet her past employer alleges she was terminated on June 17, 2002?"
 {¶ 36} "Was [sic.] claimant/appellant's constitutional rights violated when her past employers jeri westover and linda jones became judge jury and executioner in totaling points and ultimately discharging claimant/appellant, when it was the supervisor's job to do all the above?"
 {¶ 37} "Was it unlawful and unreasonable that the Magistrate's decision was untimely filed. [sic.] fifty days late?"
 {¶ 38} The issues raised in these assignments of error are not properly before this court. As this is an appeal from the trial court's affirmance of the commission's decision, we are limited to reviewing whether the decision is supported by evidence in the record and determining whether it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, Plakas Mannos, 73 Ohio St.3d at 696. As discussed in appellant's previous assignments of error, the commission's decision was supported by competent, credible evidence. This court cannot consider the merits of these other matters that appellant now raises.
 {¶ 39} For the reasons stated above, the trial court's decision is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., dissents. See dissenting opinion. (DeGenaro, J., would dismiss this appeal for failure of appellant to file a proper brief.)