[Cite as *Smola v. Dir., Ohio Dept. of Job & Family Servs.*, 2014-Ohio-1244.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100362**

## ANITA M. SMOLA

PLAINTIFF-APPELLANT

vs.

## DIRECTOR, OHIO DEPARTMENT OF JOB & FAMILY SERVICES, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-801060

**BEFORE:** Keough, J., Celebrezze, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 27, 2014

**ATTORNEYS FOR APPELLANT**

Kenneth J. Kowalski
Doron M. Kalir
Cleveland-Marshall College of Law
2121 Euclid Avenue, LB 138
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE
DIRECTOR, OHIO DEPARTMENT OF
JOB AND FAMILY SERVICES**

Mike DeWine
Ohio Attorney General
By:   Laurence R. Snyder
Assistant Attorney General
State Office Building, 11th Floor
615 West Superior Avenue
Cleveland, Ohio 44113

**ON BEHALF OF UNITED READERS
SERVICES, INC.**

United Reader Services, Inc.
13400 Madison Avenue
Lakewood, Ohio 44107

KATHLEEN ANN KEOUGH, J.:

{¶1} Appellant, Anita M. Smola, appeals the judgment of the common pleas court affirming the decision of the Ohio Unemployment Compensation Review Commission that Smola quit her job without just cause and thus was not entitled to unemployment compensation. We affirm.

## I. Background

{¶2} After she quit her job with United Readers Services, Inc. ("URS"), Smola applied for unemployment benefits. The Ohio Department of Job and Family Services ("ODJFS"), through its director, determined that Smola quit her job without just cause and denied her claim for benefits. The director subsequently issued a redetermination that affirmed the original determination. Smola appealed the redetermination, and the case was transferred to the Unemployment Compensation Review Commission. A hearing officer subsequently held a telephonic hearing. Smola appeared; no one appeared on behalf of URS.

{¶3} Smola, who lived in Brook Park when she began working for URS, which is located in Rocky River, testified that she accepted the position with URS knowing that she would be using public transportation to get to and from work. It is unclear from the record what Smola's position at URS was. Her hours were 9 a.m. to 3 p.m., with a half-hour unpaid lunch, Monday through Friday, and 10 a.m. to 1 p.m. on Saturday. Smola testified that she was hired at $8.00 an hour, with a $2.00 per hour attendance bonus if she was not late for work at all during the week. The administrative record

indicates that she was also eligible for a commission of $12.00 to $15.00 per hour in addition to her regular pay.

{¶4} Smola said that she reported for training at URS on Tuesday, August 7, 2011. She worked on Wednesday, August 8, but on Thursday, August 9, she called in sick because the neighbor who would normally give her a ride to the train station could not do so. Smola's third, and last, day of work was Friday, August 10. She said that she did not call URS to advise her employer that she would not be returning and just used its three-day "no-call/no-show" policy to quit her employment.

{¶5} Smola said that it took her at least two hours each way to get to and from work. Her neighbor would drive her to the train station at 7 a.m. and she would take the train to another station where she would catch a bus to work; in the afternoon, she would take a bus, then the train, and then walk home, arriving at 5:30 p.m. Smola said that it cost her $6 per day for public transportation. She said that she quit her job because her commute "made it a very long day for five and a-half hours pay" and that she "had no idea" when she started the job what her commute would actually entail.

{¶6} The review commission subsequently affirmed the director's redetermination that denied Smola's application for benefits. Smola appealed to the common pleas court, which found that the review commission's decision "was not unlawful, unreasonable or against the manifest weight of the evidence" and, accordingly, affirmed the review commission's decision denying unemployment compensation benefits. This appeal followed.

## II. Analysis

{¶7} In her first assignment of error, Smola contends that the Review commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence.

{¶8} Our standard of review is very limited.[1] This court cannot reverse the trial court's decision to uphold the commission's just cause determination unless the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H); *Tzangas, Plakas & Mannos v. Ohio Bur. Of Emp. Serv.*, 73 Ohio St.3d 694, 696-697, 632 N.E.2d 1207 (1995); *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985). In addition, this court has no authority to reverse a final decision of the commission under a manifest-weight-of-the-evidence standard if there is some competent evidence in the record to support it. *Id.* In other words, a reviewing court may not reverse the commission's decision simply because reasonable minds might reach different conclusions. *Id.*

{¶9} Under R.C. 4141.29(D)(2)(a), a claimant is ineligible for unemployment compensation benefits if that individual quit work without just cause or was discharged for just cause. Although not defined by statute, "just cause" has been defined as "'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a

---

[1]The Seventh District has stated that an appellant's challenge to the trial court's decision in such a case faces an "arduous" standard of review. *Hurd v. Ohio Dept. Of Job & Family Serv.,* 7th Dist. Mahoning No. 01CA 180, 2002-Ohio-5874, ¶ 11.

particular act.'" *Irvine*, *supra*, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12, 335 N.E.2d 751 (10th Dist.)   What constitutes just cause depends upon the factual circumstances of each case.  *Williams v. Ohio Dept. of Job & Family Serv.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 22.   Furthermore, what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act.  *Id.*  "The Act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own."  *Salzl v. Gibson Greeting Cards, Inc.*, 61 Ohio St.2d 35, 39, 399 N.E.2d 76 (1980).

{¶10}   In its decision, the hearing officer found that:

> Claimant argues that her travel time and costs were unreasonable in relationship to her earnings and she did not fully realize this at the time that she accepted the job.   However, claimant admits that the employer accurately communicated the wages, hours, and transportation requirement to her before she accepted the position.   These circumstances do not constitute just cause for quitting work for purposes of unemployment compensation benefits.   The Hearing Officer finds that the claimant quit work with United Readers Service Inc. without just cause.

{¶11}    Smola contends that the hearing officer's conclusion that she was ineligible for unemployment compensation benefits because URS had informed her that she was responsible for providing her own transportation to and from work did not address the relevant question in this case, which is whether it was reasonable for her to quit her job after she discovered the long daily commute required to get to and from her job.   Smola contends that her knowledge upon hiring that she was responsible for getting to and from work is not relevant to the reasonableness of her decision to quit and that "the

relevant question is whether a reasonable person subject to an arduous 4.5 hour commute six days a week for only a 4 to 5.5 hour workday would quit the position."

{¶12} Smola cites *Vetanze v. Admin., Ohio Bur. of Emp. Serv.*, 7th Dist. Belmont No. 99-BA-17, 2000 Ohio App. LEXIS 2774 (June 22, 2000), as support for her assertion that she quit her position for just cause because the time and expense of her commute were unreasonable when compared to her earnings. Vetanze was laid off due to a labor dispute from a position he had held at a steel company for 17 years. He then applied for and received unemployment compensation. Six days later, he found a job that paid $8.85 an hour at a company located in Wooster, Ohio, approximately 100 miles from his home. Foregoing the unemployment benefits, he took the new position, intending to relocate to Wooster. After determining that housing costs in Wooster were too high for his $8.85 hourly wage, and that he could not continue commuting 100 miles each way, he quit. The Seventh District subsequently reversed the commission's denial of his application for unemployment benefits, finding that Vetanze quit his job for just cause because "an ordinary, reasonable person under similar circumstances could not drive a 200 mile round trip every day for an hourly wage of $8.85. Traveling this distance every day would be hazardous and would pose upon him an unreasonable economic burden." *Id.* at *5-6.

{¶13} Smola contends that, like Vetanze, she quit her job for just cause because her daily commute was unreasonably lengthy, burdensome, and expensive, and that it would be unreasonable to expect her to keep making that commute every day for

part-time work. However, although reasonable minds might differ over the proper result in this case and might even sympathize with Smola's plight, this court must affirm the commission if there is some evidence in the record to support its determination. The record reflects that the commission's determination that Smola quit without just cause was based on reliable, probative evidence.

{¶14} Although Smola's job was part-time, her weekly hours totaled 31.5. Thus, if Smola had worked 31.5 hours per week at a rate of $8 per hour, she would have earned $252 per week. If she were on time every day, she would have received an additional $2 per hour, which would have raised her weekly pay to $315. And she could have received a commission of anywhere from $12 to $15 per hour in addition to her regular earnings, which would have substantially increased her weekly pay.[2] In light of her weekly earnings potential, Smola's argument that she quit for just cause because the $36 weekly expense for public transportation was unreasonable in relation to her compensation is without merit. For the same reason, Smola's argument that her daily commute was too long for a part-time job is without merit. In light of Smola's earnings potential, a workday of 7 a.m. to 5:30 p.m., including commuting time (a typical workday for many people), was not unreasonably lengthy or burdensome. Unlike *Vetanze*, Smola's commute did not pose an unreasonable economic burden, nor was it unreasonably lengthy.

---

[2]The commission figure comes from the admistrative record. Although Smola's eligibility for commission was not discussed at the hearing before the commission, R.C. 4141.281(C) requires a hearing officer to consider all of the evidence in the ODJFS file before rendering a decision.

**{¶15}** Morover, the facts in this case are different from those in *Vetanze*. Vetanze voluntarily accepted his new job only six days after applying for and receiving unemployment compensation, even though he was not required to take the job under the unemployment statute. He then went to great efforts to keep his new job, despite its inconvenience and cost. Smola, on the other hand, quit after three days without even advising her employer that she would not be returning. And unlike Vetanze, who used his own car to drive 100 miles each way, incurring substantial transportation costs and wear and tear on his car while earning only $8.85 an hour, Smola used public transportation to commute to work.

**{¶16}** Smola contends that the commission's decision is "against Ohio law and precedent" because the commission reached a different decision in her case than in *Vetanze*. But, as Smola concedes, just cause determinations are made on a case-by-case basis depending on the facts, and, as discussed above, this case is distinguishable from *Vetanze*.

**{¶17}** Moreover, although the Seventh District found Ventanze's quit to be for just cause, in *Hurd v. Ohio Dept. of Job & Family Serv.*, 7th Dist. Mahoning No. 01CA 180, 2002-Ohio-5874, a similar case, it affirmed the commission's finding that an employee who quit her employment of 20 years after her employer relocated 50 miles away from her home due to the stress and expense associated with her commute quit without just cause. As in this case, the appellate court found that the facts in *Hurd* were distinguishable from *Vetanze,* and that there was competent evidence in the record to

support the commission's decision.   The court also noted that "transportation to and from work is generally found to be the responsibility of the employee.   Accordingly, an employee's decision to quit a job due to transportation difficulties typically does not create just cause under the Unemployment Compensation Act."   (Citations omitted.)   *Id.* at ¶ 28.

{¶18} Smola also contends that the commission's decision was in error because the commission did not follow its own Unemployment Compensation Policy Guide, which provides that

> [i]f, after accepting a new job [i.e., new work], an individual quit the employment within a reasonable period (approximately three months) because of the commuting time and/or expense, the quit is for just cause, if the travel time and/or cost are shown to be unreasonable in relationship to the earnings.

{¶19}   The publication is merely a guide, however, and its provisions are not mandatory.   *Buck v. Admin., Ohio Bur. of Emp. Serv.*, 4th Dist. Athens No. 1422, 1990 Ohio App. LEXIS 1631 (Apr. 20, 1990); *Sebest v. Bd. of Review, Ohio Bur. of Emp. Serv.*, 7th Dist. Mahoning No. 96 C.A. 166, 1987 Ohio App. LEXIS 8236 (Aug. 10, 1987).   Moreover, even under the Guide, to be a quit with just cause, the travel time and cost must be "unreasonable in relationship to the earnings," which is not the case here.

{¶20} Because there is evidence in the record to support its determination, we find that the commission's decision that Smola's "circumstances do not constitute just cause for quitting work for purposes of unemployment compensation" was not unreasonable, unlawful, or against the manifest weight of the evidence.   The first assignment of error is

therefore overruled.

{¶21} In her second assignment of error, Smola contends that the commission's decision denying her unemployment compensation is against Ohio public policy because it penalizes her for taking a job that she was not required to take. She asserts that she demonstrated initiative by accepting a new position at some distance from her home, and that she should not be penalized by a denial of unemployment benefits because an ordinary, reasonable person under similar circumstances would have also quit. We disagree.

{¶22} As discussed above, there was competent evidence in the record demonstrating that Smola's commute time and cost for public transportation were not unreasonable or unduly burdensome in light of her potential earnings. However, despite the fact that her job at URS offered an opportunity for her to earn more than she was receiving in unemployment benefits, she chose to quit. The commission's denial of unemployment benefits under these circumstances actually affirms the Unemployment Compensation Act's purpose: "The Act exists 'to enable unfortunate employees, who become and remain *involuntarily* employed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" (Emphasis sic.) *Irvine,* 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985), quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223, 199 N.E.2d 3 (1964). The second assignment of error is overruled.

{¶23} Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR